WILLIAM M. SUTTON & HARRY SUTTON *v.* Estate of JAMES SUTTON.

Under a contract for the purchase of real and personal estate, where possession is taken by the vendee and payments made, but deeds of conveyance not executed, the vendee cannot recover back what he has paid, unless the vendor refuse to execute the deeds.

A court of equity, in such case, will compel the execution of the deeds.

But if the vendor decease, and administration is taken, and the estate represented insolvent, and the vendee is thus prevented from carrying the contract into effect, he would be entitled to come in, under the commission, for what he has paid.

But when this is not done, and the vendee fulfils the contract, on his part, and all debts against the estate are thereby extinguished, the vendee will not then be permitted to convert a *payment* on this contract into a *claim* against the estate, when in fact there are no debts owing from the estate.

An administration and commission of insolvency, regularly granted by a court of probate, cannot be impeached collaterally.

But where, by contract among the heirs, the estate had been fully settled, before the commission of insolvency, one of the heirs, who paid the debts of the estate under this contract, will not be permitted to take advantage of such commission to convert such payments into claims against the estate. Had such payments been made under any misapprehension of facts, the case might merit a different consideration.

THIS was an appeal from the decision of commissioners appointed by the probate court to receive, examine, and adjust all claims against the estate of James Sutton, deceased, and those exhibited in off-set thereto. The commissioners allowed a claim against said estate in favor of the said Wm. M. and Harry, from which allowance Nathaniel Sutton, one of the heirs, appealed, the said Wm. M. being administrator of said estate.

The appeal having been entered in court, commissioners were appointed to adjust the accounts of the parties, and report the facts relating thereto. The commissioners so appointed afterwards reported, in substance, that, upon the hearing, the appellees presented and claimed to have allowed in their favor, an account which, including interest, amounted to $7,786,27; that the appellant presented, and claimed to have allowed in off-set, an account in favor of the estate; that they allowed the appellees the sum of $7,523,02, including interest, and, in off-set thereto, including interest, the

Chittenden,
January,
1841.

Suttons
v.
Estate of
Sutton.

sum of $5,520,70, in favor of the estate, leaving a balance of $2,002,32 due from the estate to the appellees, subject, however, to the opinion of the court upon the facts stated in said report.

The facts found by said commissioners were reported by them as follows:

'From the evidence before us, we find that James Sutton 'died intestate, about the middle of August, 1833, leaving 'a widow and seven children, his heirs at law, to wit, Will-'iam M. Sutton and Harry Sutton, the appellees, Nathaniel 'Sutton, the appellant, Harvey Sutton, Edward Sutton, Sal-'ly Sutton, and Rachael Sutton, all of whom are now alive, 'except Sally, who deceased sometime in January, 1840; 'that, about the first of April, 1833, the intestate and the 'appellees made a parol agreement, by the terms of which the 'latter were to pay all the debts of the intestate, a schedule 'of which was then made, and the intestate was to convey 'to them about five hundred acres of his real estate, and all 'his personal property, except household furniture, and they 'were also to have the use of the St. George farm for a term 'of years; and if the debts exceeded the value of the real and 'personal property and the use of the farm, the excess was 'to be paid them by the intestate. Under this agreement, 'the appellees used and improved the real estate in the sum-'mer of 1833, and had possession of the personal property, 'and paid some of the intestate's debts; but the agreement 'was not otherwise carried into effect, the intestate having 'deceased before the contract was consummated, by execu-'ting the necessary writings. A bond and a deed were drawn 'up by the intestate, in his lifetime, in pursuance of said 'agreement, which were not signed, but were found among 'his papers, on his decease. On the 17th of September, '1833, all the children and heirs of the said intestate, except 'Edward, who was not then of age, duly executed a paper, 'under seal, the substance of which is as follows:

"We, the undersigned, heirs to the estate of James Sut-"ton, late of St. George, deceased, do hereby enter into the "following agreement, and bind ourselves firmly, by these "presents, each to the other, in the penal sum of one thou-"sand dollars, to comply with, and abide by, this agreement. "First. It is agreed, for a consideration herein after men-

CHITTENDEN, January, 1841.

Suttons
v.
Estate of
Sutton.

" tioned, that Wm. M. and Harry shall settle and pay all the " debts of said estate, and also pay Sally Sutton one thou- " sand dollars, which is to be in full for her claim on said es- " tate. And as a remuneration for performing the above, " and to pay them for their services since they were twenty- " one years of age, the other heirs agree to quit-claim to the " said William and Harry, all their right and title to the Wil- " liston farms, and four lots of the St. George mountain land; " also, all the stock belonging to said estate, (describing it,) " and all other personal property and debts due the estate; " and also the use of the whole estate, with the exceptions " hereafter mentioned, till the debts of said estate shall be " discharged, including the notes to Sally Sutton, not ex- " ceeding the term of six years, then to be relinquished, ex- " cept what is quit-claimed to them, and left in as good re- " pair as it now is, with the following stock thereon, (descri- " bing the property.)" Then follows the exceptions, which are not material to the case. " The understanding is, that " the said William and Harry shall make it their first busi- " ness to discharge said debts, and when the same can be " done, and leave the same amount of stock and other per- " sonal property they now possess, it shall be considered as " accomplished."

' Under this agreement, the appellees assumed the control ' and management of the real and personal estate of the de- ' ceased, took and appropriated the rents and profits of the ' real estate to the payment of the debts against the estate, ' and to their own use, and disposed of the personal property ' for the same purpose. All which was done with the appro- ' bation of the other heirs, and without objection on the part ' of the widow. Under this latter agreement, all the debts ' were paid by the appellees, for which they claim to be al- ' lowed, except certain items specified in the account, which ' latter items were paid by them under the agreement with ' the intestate of April, 1833. On the same 17th day of ' September, 1833, in performance of the contract executed ' on that day, were executed and delivered, three deeds of ' that date, viz, one from Sally Sutton to William M. Sutton, ' one from Wm. M., Nathaniel, Harvey, Sally, and Rachael ' Sutton to Harry Sutton, and one from Nathaniel, Harry, ' Harvey, Sally, and Rachael Sutton to Wm. M. Sutton, con-

Chittenden,
January.
[1841.

Suttons
v.
Estate of
Sutton.

'veying certain lands, in pursuance of said agreement. 'Sometime after Edward Sutton became of age, the appel- 'lees procured from him a deed of all his interest in the real 'estate. This deed was given, not by virtue of said contract 'of 17th of September, but on a purchase of the said Ed- 'ward's interest, as heir to his father, in the real estate, for 'which they paid him $100.

'The appellees, in explanation of the contract of the 17th 'of September, offered in evidence a writing dated Sept.12th, '1836, the substance of which is as follows :

" Whereas, Wm. M. Sutton, Nathaniel Sutton, Harry Sut- "ton, Harvey Sutton, Sally Sutton, and Rachael Sutton, heirs " of James Sutton, late of St. George, deceased, on the 17th " day of ·September, 1833, entered into a bond or agreement, " relative to the estate of their deceased father ; and whereas, " the said bond or agreement is not full or explicit as to what " was the real intention of the signers of that instrument, " now, therefore, we hereby agree, that it was our understan- " ding, that Wm. M. and Harry Sutton were to go on and " manage the property, and pay the debts against the estate " of James Sutton, and that if it should turn out, in the end, " that there should be no more than sufficient property to pay " all the debts and expenses, then, in that case, the said Wm. " M. and Harry Sutton were to have and hold all the prop- " erty, free and clear from any claim by us, and that if it " should turn out that there was property more than sufficient " to pay all debts and expenses, then, in that case, after re- " munerating the said Wm. M. and Harry for all moneys " paid out, and all just claims and liabilities, the overplus " was to be equitably divided among the heirs ; and it was " also understood and agreed, that no advantage should be " taken by any one of us, by any different construction, than " the one above stated, of the instrument aforesaid.

" Given under our hands at Williston, Sept. 12th 1836."

'This paper was signed and sealed by Wm. M. Sutton, 'Harry Sutton, Harvey Sutton, Rachael Sutton, and Sally 'Sutton.

'The appellant objected to the admission of this paper, 'but the referees received it. The appellant then gave ev- 'idence, tending to show, and the commissioners find, that 'this writing was signed, on the request of Harry, by the

'said Sally and Rachael Sutton, without its being read, or its 'contents stated to them. The appellant insisted, before 'the commissioners, that the contract of 17th Sept. 1833, 'was a bar to the appellees' claims, and that, if it was not a 'bar, the appellees could not recover, or have allowed any 'payments that were made after the decease of the intestate. 'These questions the commissioners did not pass upon.

'The appellant also objected to the allowance of certain 'items, numbered 65, 66 and 67, on the ground that they were 'debts incurred by the intestate, after the contract of April, '1833, and that the appellees were not bound, by that con- 'tract, to pay them, and, therefore, the payment was vol- 'untary. No request for their payment was proved to have 'been made by the intestate.

'The letters of administration were taken out on the 15th 'of June, 1836, on the decedent's estate, by Wm. M. Sutton, 'one of the appellees.

'The appellees insisted, that if the payments which they 'had made, subsequently to the death of James Sutton, could 'not legally be allowed in their names against the estate, that 'they should be allowed in the names of the original credit- 'ors. On this question the commissioners did not pass, but 'we report all the facts bearing upon this and every other 'question, that was raised by either party on the hearing.

'All questions of law arising in this case are submitted, 'and referred, by the commissioners, to the court.'

The county court rendered a judgment on said report, for the defendants to recover costs, and the plaintiffs except- ed to the decision.

*Wm. P. Briggs and Hyde & Peck*, for appellees.

1. Reports of referees will not be set aside for error in law, unless the report clearly shews that the referees laid down a rule of action and misapplied it, whereby injustice was done. The statement that they did not pass upon certain legal questions, and the reference of all legal questions to the court, does not open the case to technical objections, as all these questions must have been passed upon in coming to the result to which they arrived. The report does not show whether they intended to be governed by legal or equitable

*Margin:* CHITTENDEN, January, 1841.

Suttons *v.* Estate of Sutton.

CHITTENDEN,
January,
1841.

Suttons
v.
Estate of
Sutton.

principles.  *Learned* v. *Bellows*, 8 Vt. Rep. 79.  *Stevens* v. *Pierson*, 5 Vt. Rep. 503.

2. The commissioners had nothing to do with the contract between the heirs, of 17th Sept., 1833. By law, they were bound to allow all claims that existed against the estate of the decedent.  Nothing short of an agreement of all interested, including creditors, can divert the settlement of an estate from the due course of law.  The contract is void, being against the policy of the statute relative to settlement of estates.  Statute, p. 347, sec 68. (Ed. 1824.)

3. This agreement between the heirs, upon the face of it, contemplates being executed by all the heirs, and is not binding upon the appellees till thus executed.  The nature and the purposes of the contract also show this.  The stipulation that "the other heirs" should quit-claim, &c., requires this to be done by all the heirs, and such conveyance is a condition precedent to the binding force of the contract on the appellees.

4. The contract has reference to the ultimate distribution of the property among the heirs, and was not intended to embarrass or interfere with the settlement of the estate.  And the liquidating of the debts before commissioners is not inconsistent with the contract.  It is the interest of all that the claims be made certain by adjudication before commissioners or barred by the statute, and that the estate be so settled as to show what the heirs receive as creditors, and what as heirs, in order to protect them against contingent claims, under the 46th and 48th sections of the probate act, ch. 49.

In settling the rights of the widow and Edward Sutton in the estate, the law, and not the contract, will be the judge, and the appellees have a right to have their claims allowed for this purpose ; otherwise injustice would be done them in seting off the distributive share of Edward and the widow.

5. The contract cannot operate as an extinguishment of the claims of the appellees, so long as they have a right to set up the debt as against any of the heirs or others interested in the estate.  They have this right as against the widow, Edward Sutton, and the heirs who signed the contract of Sept. 12, 1836, and can avail themselves of their claims against the estate in no other way than by an allowance against the estate.

CHITTENDEN,
January,
1841.

Suttons
v.
Estate of
Sutton.

6. The conduct of the other heirs, in executing the contract of Sept. 13, 1836, and in presenting claims against the estate, is an abandonment of the contract on their part, or shows that they considered it merely as a rule of distribution, so far as those were concerned who executed it, after the settlement of the estate by course of law. Any other application of the contract will involve the rights óf the appellees and Edward Sutton and the widow, and the parties to the contract of Sept., 1836, in interminable difficulty.

7. If the contract is binding, the only remedy is in damages upon the contract. The claim of the appellees is not against the appellant or heirs, but against the estate or fund, and therefore not extinguished. The debt may follow the fund, and the contract can have no other effect than to discharge this lien so far as the share of the parties to the contract is concerned ; but on the residue the lien is perfect. Both these ends may be answered by making the contract effectual only in the ultimate distribution. *Chandler* v. *Herrick*, 19 Johns. 129. *Clark* v. *Burk*, 3 Cow. 151. *U. S. Bank* v. *Magill*, 1 Paine R. 661.

8. The contract of April, 1833, between the appellees and and the intestate, may be considered as a request of the intestate applicable to the payments both before and after the death of the intestate. But if the death terminated the contract, by rendering a performance on the part of the intestate impossible, (*Stow* v. *Stevens*, 7 Vt. R. 27,) then the appellees may recover back what they have done under it. A party cannot protect himself by the statute of frauds, and at the same time interpose the contract as a bar to a recovery for what has been done under it. *Rice* v. *Peet*, 15 Johns. R. 503. *Kidder* v. *Hunt*, 1 Pick. 328,

9. The report does not show that items 65, 66 and 67, were for payments on debts contracted by the intestate after his contract, nor that these debts were not in the schedule. But it is stated that "they were paid by them under the agreewith the intestate." But if the payment was voluntary, it may be treated as a purchase of the notes, and as such should be allowed, and if the payment is relied on as an extinguishment of the notes, it is adoping the act of the appellees ; and if a debtor avails himself of a voluntary payment, it is equivalent to a request, and makes him liable for money paid.

CHITTENDEN,
January,
1841.

Suttons
v.
Estate of
Sutton.

10. The charges in the appellees' account for payments made under the contract with the intestate, are not embraced in the contract of the heirs, of Sept., 1833. As the contract specifies the claims for services, it excludes all others.

11. The debts which the appellees paid prior to the granting of administration, ought to be allowed, as the probate court cannot allow such payments in the settlement of the administrator's account. The debts not having been allowed by commissioners, the appellees ought, at least, to be permitted to stand in the place of the creditors, whose debts they have paid. *Walker* v. *Hill*, 17 Mass. R. 380.

*J. Maeck*, for defendant, contended that, if the payments were made by the plaintiffs in pursuance of the agreement between them and the intestate, they could not be allowed against the estate. The contract between the plaintiffs and intestate was entire ; the plaintiffs were to be paid in a particular manner, and nothing had transpired to prevent their being paid in the mode agreed upon. Had any of the heirs attempted to prevent their being so paid, a court of chancery would have enforced the agreement. *Shaw* v. *Shaw*, 6 Vt. R. 69. *Dowdle* v. *Camp*, 12 Johns. 451.

The plaintiffs could have compelled a specific performance, having themselves performed on their part. Mad. ch. vol. 1, 378, 380, 381, 382, and cases cited. *Meech* v. *Stone et al.* 1 D. Chipman, 182.

It was competent for the heirs to make such an agreement as they did make on the 17th of Sept., and they are bound by that agreement ; more especially are the plaintiffs bound by it, as they have accepted the deeds from the other heirs, and acted under the agreement for more than three years. *Sanger and wife* v. *Cleaveland*, 10 Mass. 415. *Colgrove* v. *Fillmore*, 1 Aik. 347.

Had the agreement been made among the heirs anterior to the death of the intestate, it would have been binding, in the absence of any imposition or fraud, and a court of chancery would have decreed its execution. *Weatherell* v. *Weatherell*, 2 Eng. Cond. Ch. R. 272. *Hyde* v. *White*, 7 do. 520. Story's Com. on Eq. 266, 334.

The paper, purporting to be an explanation of the agreement, does not vary the case. It was not signed by all the

CHITTENDEN,
January,
1841.

Suttons
v.
Estate of
Sutton.

parties to the original contract, and some of those who did sign it were, at the time of signing, ignorant of its contents.

The opinion of the court was delivered by

REDFIELD, J.—The only controversy in the present case is, whether the plaintiff's have shown any claim against the estate of James Sutton, which they can enforce at law? The court think they have not.

It is true, that, by the terms of the contract of the first of April, 1833, the plaintiffs were to have all the personal estate of the deceased, and five hundred acres of the real estate, and the use of some other real estate, and were to pay all his debts, and if the debts exceeded the value of the property received, they were to be paid the excess. Under this contract the plaintiffs took possession of the property, and proceeded to pay debts, to a large amount, during the lifetime of James Sutton.

Had James Sutton lived, it is plainly to be seen, that these plaintiffs could have had no claim against him until they had paid debts to an amount exceeding the property received. This they had not done at his decease. They could claim nothing against the estate, then, under that contract. But how shall they be permitted to set aside that contract, and claim as on a general *indebitatus* assumpsit? This they might do if James Sutton had refused to carry the contract into effect on his part. But this he did not do. The writings were not fully executed; but there was such part performance as would justify a court of equity in compelling their execution. *Phillips* v. *Thompson*, 1 Johns. Ch. 131. *Clinan* v. *Cooke*, 1 Sch. & Lef. 41. *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 273, 285. *Lindsay* v. *Lynch*, 2 Sch. & Lef. 1.

It is true, too, that if in consequence of the decease, the performance of the contract had become impossible, by administration being taken out by one of the creditors, and a representation of insolvency, the plaintiffs would have been absolved from their contract, and might have come in for compensation for what they had done under the contract. For, when administration is regularly taken upon an estate, and a representation of insolvency, the whole estate and all claims must be reduced to cash, as of the day of the decease,

CHITTENDEN, and all specific contracts, to be performed in future, are de-
January, termined by the death, and the parties come in under the
1841.
commission for compensation. But this was not done.
Sutton          Instead of this, the plaintiffs made a further confirmatory
v.
Estate of contract with the heirs, by which they stipulated to pay all
Suttons. the debts and to pay Sally Sutton one thousand dollars, and
have received the agreed consideration and paid all which
they have ever paid in fulfilment of that contract. These
payments, so made, constitute no legal claim against any one,
and the original debts are extinguished by those, who had
the only interest in that matter, in order to release the prop-
erty from the lien which the creditors held upon it. It is
true, doubtless, that had these debts been paid under a mis-
apprehension of facts, and where equity required that the
plaintiffs should be let in as creditors, we should permit
them to come in the place of the original creditors. *Walker*
v. *Hill*, 17 Mass. R. 380.

But we think the present case merits a different consider-
ation. Here the estate is in effect closed, so far as credit-
ors are concerned. And we would not suffer the plain-
tiffs to take advantage of an administration and representa-
tion of insolvency, (which, as they are granted by a court of
competent jurisdiction, must now be considered regular,) to
set on foot a claim, which, as in favor of them, never had
any existence either in law or equity.

We have not considered the contract of September,
1836, as of any validity to vary the case.

Judgment affirmed.

WILLIAMS, Ch. J., dissenting.