Irwin *v.* Scriber.

appear and stand trial, but does not show that it was necessary for him to be present at such trial.

5. The covenant in the bond is that the defendant will appear and answer to the indictment, and at all times render himself amenable to the order and process of the Court, and if convicted render himself in execution. The complaint shows that he did appear and answer the indictment, but does not show that any order was made by the Court, or process issued, which the defendant failed to hold himself amenable to, and does not show that any conviction was had therein upon which he failed to render himself up.

6. The case of *People* v. *Wolf*, (16 Cal. 385) does not militate against these positions.

---

IRWIN, ADMINISTRATOR OF THE ESTATE OF MARQUITO SOTO, DECEASED, *v.* SCRIBER AND WIFE.

LETTERS of administration upon an estate, granted by the Probate Court of one county, cannot be collaterally attacked by showing that the last place of residence of the deceased was not in that county, and therefore, that the Court had no jurisdiction.

Under our statute, (Acts 1858, 95) the same presumptions as to jurisdiction attach to the proceedings of Probate Courts, within the jurisdiction conferred on them by law, as in the case of District Courts.

Authorities on this subject cited and commented on.

*Beckett* v. *Selover*, (7 Cal. 215) upon this question, commented on.

APPEAL from the Fifteenth District.

Marquito Soto died in the city of Sacramento in November, 1860, leaving among her assets a note made by respondents, Scriber and wife, for $1,000, and secured by mortgage on certain real estate located in the town of Oroville, Butte county.

On the —— day of January, 1861, Jared Irwin, Public Administrator of the city and county of Sacramento, and administrator of the estate of deceased, commenced an action in the District Court of the Fifteenth District, Butte county, to foreclose such mortgage, setting forth the following facts, to wit:

That on the —— day of September, A. D. 1859, he was elected Public Administrator of the city and county of Sacramento; that he executed and filed his bond, approved by the County Judge, and that he was thereupon duly qualified and entered upon the duties of his office, and that he has been ever since, and is now, acting as such administrator. He further averred, that on the thirtieth day of November, 1860, Marquito Soto died intestate, in the city of Sacramento, without leaving any known heirs entitled by law to administer upon the estate. That after petition, notice, proof of death and residence within that county, the Probate Court thereof, on the nineteenth day of December, 1860, ordered letters of administration to issue to him upon said estate, whereby he took possession of and became administrator of the same. Plaintiff then made the usual averments in suits of that character, praying for decree for sale of property, etc. To which complaint defendants demurred and answered; demurrer overruled by the Court.

Defendants admit the making of the note and mortgage, and that they are indebted in the sum of $1,000, but deny that Irwin is the legally appointed administrator of the estate. They deny that deceased was a resident of Sacramento city at the time of her death, and aver that she was a resident of Oroville, Butte county, and that one E. Parker, Public Administrator of that county, is the only proper person to administer on her estate.

Plaintiff demurred to defendants' answer, which was overruled by the Court, plaintiff excepting.

When the cause came on for trial, plaintiff moved to strike out all that portion of defendants' answer which set forth that " E. Parker, of Butte county, was the legal administrator of deceased's

estate; also, all that portion of defendants' answer which sets up as a defense that deceased was not a resident of Sacramento county at the time of her death, for the reason that the Court had not jurisdiction to try the questions therein raised, and that the same was irrelevant."

The Court overruled the motion, to which ruling plaintiff excepted.

The Court then held that the defendants' answer was in the nature of a plea in abatement, and that plaintiff occupied the affirmative of that issue, plaintiff excepting.

The Court, sitting as a jury, proceeded to try the question raised by defendants' plea in abatement.

Plaintiff introduced an order of the Probate Court of Sacramento county, granting letters of administration on the estate to him; also, original letters and certificate of the Clerk of that Court that the same had not been revoked; also, depositions of two witnesses showing that deceased was a resident of Sacramento at the time of her death.

Defendants then introduced several witnesses, showing that deceased had been residing at Oroville, Butte county, until within a few weeks of her death.

The cause was then submitted on the plea in abatement, and the Court found: " That Marquito Soto, deceased, was, at the time of her death, a resident of Oroville, Butte county, and that plaintiff, as Public Administrator of Sacramento county, is not entitled to administer upon her estate; " case dismissed; plaintiff appeals.

*Harrison & Estee*, for Appellant.

I.   Under our practice, letters of administration are conclusive against all the world until the order granting them is either reversed on appeal or revoked on application made in the Probate Court of the county where the letters were issued (unless void on their face). The Probate Court alone has authority to grant letters testamentary and of administration in this State; and in passing upon the facts presented to it, of necessity must perform a judicial act.   It hears and determines all the questions which are necessary to give it jurisdiction. (Act concerning Estates of Deceased Persons, secs. 61–65; Act of March 27th, 1858, 95.)

The moment a District Court can go behind the letters of administration, and exercise a supervisory power over the proceedings of the Probate Court, that moment it becomes, to all intents, an Appellate Court. In the case of *Reed* v. *McCormick* (4 Cal. 342) it was held, "that the District Court has, under the Constitution, no appellate jurisdiction from the Probate Courts."

Again, if the judgments and orders of the Probate Court can be questioned anywhere, or if not conclusive against all the world, it will lead to interminable difficulties in the settlement of estates of deceased persons. An administrator's letter, when offered in evidence to establish his authority, would be of no avail—he would be obliged to go from Court to Court, and in each, prove all the facts necessary to give the Probate Court, in the county where letters were granted, jurisdiction. In Butte county the jury might find, in an issue of this character, that deceased was not a resident of Sacramento at the time of her death, and the cause would be dismissed. In another county, with the same plea, the jury might find that deceased was a resident of the county where letters were granted, and the administrator would make the money, leaving a portion of the estate uncollected and uncollectable, and thereby embarrassing at every step the action of the administrator.

If the Court committed error in granting letters, the statute gives a remedy, and parties interested must pursue that remedy. (*Monell* v. *Dennison*, 17 How. P. R. 422; *Atkins* v. *Kinnan*, 20 Wend. 241; *Leonard* v. *Leonard*, 14 Pick. 286; *Wescott* v. *Cody*, 5 John's Ch. R. 334; *Warner* v. *Wilson*, 4 Cal. 310; *Martin E. Cook*, 14 Id. 130.)

The case of *Beckett* v. *Selover* (7 Cal. 215) we deem questionable authority: 1st, some of the points passed upon at the rehearing of that case were not before the Court; and 2d, the Statute of 1858, giving greater force and effect to the judgments of Probate Courts, was passed long subsequent to this decision.

Since the above decision, the strictness of the doctrine that the proceedings of the Probate Court are limited and special, is greatly modified by Statute of 1858; and while we do not contend that, under that statute, this jurisdiction is enlarged, yet we claim that like effect must be given to their acts within this acknowledged

jurisdiction as to any other Courts in the State.   We do not main-
tain but the District Court, as a Court of Chancery, may take juris-
diction in the settlement of estates of deceased persons " when
there are peculiar circumstances of embarrassment to its adminis-
tration, and when it would prevent delay, expense and waste."
(*Stoddard* v. *Van Dyke*, 12 Cal. 439.)    But it must be done by
direct proceedings in that Court, under the old common law practice.

Again, if the question of residence can be raised anywhere, in
this country it would be still more embarrassing, as a large mass of
our citizens have not families, and are migratory in their character,
living in one portion of the State one year, and in another the next,
and leaving property in various sections.

II.   Admitting the orders, judgments and decrees of the Pro-
bate Courts are not conclusive, still they cannot be questioned in
collateral proceedings.

Every presumption is against a plea in abatement.

There is no evidence that any other person had obtained letters
of administration on the estate.   (*Abbot, Adm'r* v. *Coburn*, 28 Vt.
663 ; 27 Id. 580 ; 1 Nott & McCord (S. C.) 329 ; *McPherson*
v. *C.*, 11 S. & M. 428–431 ; *Andrews* v. *Avery*, 14 Gratt. 238 ;
*Fisher* v. *Bassett*, 9 Leigh, 132, 136 ; 15 Texas, 604, 616 ; *Law-
son* v. *Crutchfield*, 2 Eng. 48 ; *Wilson* v. *Frazier*, 2 Hump. 30 ;
*Wilson* v. *Hess*, 3 Id. 142 ; 4 Denio, 90.)

BALDWIN, J. delivered the opinion of the Court—COPE, J. con-
curring.

The only question presented in this case is, whether it can be
collaterally shown against the grant of administration upon an estate
made by the Probate Court of one county, that the Court had no
jurisdiction, by showing that deceased had not her last place of res-
idence in that county.

We. think it cannot.   By the Act of March 27th, 1858, (Stat.
1858, 95) it is provided that the proceedings of Courts of Probate
within the jurisdiction conferred on them by the laws shall be con-
strued in the same manner and with like intendments as proceed-
ings of Courts of general jurisdiction, and the records, orders, judg-
ments and decrees of the said Probate Courts shall have accorded

to them like force and effect and legal presumptions as the records, orders, judgments and decrees of the District Courts.

It is scarcely disputable that a judgment of the District Court could not be collaterally impeached by showing that the party really was not in the county or served with process; or that a judgment of the United States District Court could be assailed collaterally by proof that the plaintiff was not really a resident of a different State from that of. the suit, or not an alien, etc. The same presumptions in favor of the jurisdiction now attach in favor of the Probate Court, as obtain in either of the Courts mentioned. Independently of the statute, it is, to say the least, extremely questionable whether this sort of collateral attack is admissible, although some countenance is given to it by the case of *Beckett* v. *Selover* (7 Cal. 215). The danger of such a doctrine is forcibly illustrated by Mr. Justice Roosevelt, in *Monell* v. *Dennison* (17 How. P. 426). He says: " Where the jurisdiction of a subordinate tribunal, having cognizance of the general ·subject, has attached by the presentation of a verified *prima facie* case, and by the appearance·of the parties, its decision, even on a quasi jurisdictional fact, such.as that of inhabitancy, must be conclusive, unless reversed on appeal. To allow it to be called in question collaterally, and on every occasion and during·all time, would be destructive of all confidence. No business in particular depending on letters testamentary or of administration could be safely transacted. Payments made to an executor or administrator, even after judgment, would be no protection. Even if the debtor litigated the precise point, and compelled the executor to establish it by proof, the adjudication would avail him nothing should a subsequent administrator, as in this case, spring up, and after the lapse of a fifth of a century, demand payment a second time, when a scintilla of evidence on one side remained and all on the other had perished. A large number of titles, too, depend for their validity on decrees of foreclosure, and these decrees are often made in suits instituted by executors, or administrators, or their assigns. Must these, too, be subject to be overhauled at any period, however remote, on the nice question of residence?—a question often difficult to decide where the facts are clear, and much more so, of course, where the facts are obscured

by lapse of time and loss of documents and witnesses. The doctrine contended for by plaintiff, and indispensable to his success, is, I think, altogether too dangerous for judicial sanction." (See also, *Atkins* v. *Kernan*, 20 Wend. 246 ; *Estate of Martin E. Cook*, 14 Cal. 130 ; *Warner and Buckley* v. *Wilson*, 4 Id. 310.) The precise question here has been often decided in Vermont. (See 13 Vt. 71 ; 15 Id. 344 ; 27 Id. 581 ; 28 Id. 667 ; *Brown* v. *Gibson*, 1 Nott & McCord, 326, and notes.) *Andrews* v. *Avery* (14 Gratt. 236) is a strong case. The case was very fully argued, all the authorities having been cited which were relied on in the case of *Beckett* v. *Selover*, and the case seems to have been maturely considered by the Court. The Court say : " It is now well settled that the County Court is a Court of general jurisdiction in regard to probates and the grant of administrations ; that it has jurisdiction in regard to the whole subject matter ; and that though it may err in taking jurisdiction of a particular case, yet the order is generally not void, but only voidable on citation or appeal, and cannot be questioned in any collateral proceeding. (*Fisher* v. *Bassett*, 9 Leigh, 119 ; *Burnley* v. *Duke*, 2 Rob. 102; *Schultz* v. *Schultz*, 10 Gratt. 358 ; *Cox* v. *Thomas, Adm'x*, 11 Id. 323 ; *Hutcheson* v. *Priddy*, 12 Id. 85.)

* * * " The subject matter being within the jurisdiction of the Court, to wit : the appointment of a personal representative to a decedent who is without one, the Court making the appointment will be considered as having adjudged the question of jurisdiction in the particular case ; and the order will not be void. Whether the Court had jurisdiction in the particular case or not may depend upon a variety of facts ; as, whether the decedent resided in the county whose Court made the order ; or had land there ; or died there ; or had estate of any kind there. If, after passing upon these facts, and taking cognizance of the case, the order of the Court could at any period, in any collateral proceeding, be avoided by evidence that the decedent did not reside, or die, or leave estate in the Commonwealth, all the inconvenience and other evils would be produced which are referred to in *Fisher* v. *Bassett*, and other cases before cited, and which are designed to be prevented by the principles laid down in these cases."

33

Judge Tucker, in *Fisher* v. *Bassett*, (9 Leigh, 131) says: " I do not consider a County or Hustings Court, in relation to the grant of administration, as standing on the same footing with the ordinary in England. The County Court is a Court of record, and its judgments or sentences cannot be questioned, collaterally, in other actions, provided it has jurisdiction of the cause. (6 Bac. Abr., Sheriff, M. 2, 166 ; 3 Wils. 345.) And this is to be understood as having reference to jurisdiction over the *subject matter;* for though it may be that the *facts* do not give jurisdiction over the *particular* case, yet if the jurisdiction extends over that *class of cases*, the judgment cannot be questioned ; for then the question of jurisdiction enters into and becomes an essential part of the judgment of the Court. Thus, if a County Court were to give judgment of death against a white man, the Sheriff would have no lawful authority to execute him ; or, if a Court of Chancery were to grant probate of a will, it would be *ipso facto* void, since that Court has no jurisdiction in *any* case of probates. It is held void *ipso facto*, because *no inquiry* is necessary to ascertain its invalidity. But where the Court has jurisdiction of cases *ejusdem generis*, its judgment, in any case, is not merely void, because its invalidity cannot appear without an inquiry into the facts ; an inquiry which the Court itself must be presumed to have made, and which will not, therefore, be permitted to be revived collaterally. Thus, in *Prigg* v. *Adams*, (2 Salk. 674) in an action for false imprisonment, the officer justified a *ca. sa.* on a judgment in the Court of Common Pleas, upon a verdict for five shillings, for a cause of action arising in Bristol ; the plaintiff replied an Act of Parliament erecting a Court in Bristol, and declaring that if any person brought any such action in any Court at Westminster, and it appearing upon trial to be under forty shillings, no judgment should be entered upon it, and if entered, it should be *void;* yet the Court held it only *voidable*, and sustained the plea." Several other cases in Virginia point the same way. The case of *Burdett* v. *Silsbee* (15 Texas, 615) is in remarkable analogy in the facts to this case, and is entitled to the more weight from the similarity of the statutes of that State and ours in probate matters. Wheeler, J. in delivering the opinion, said : " It is insisted that the Probate Court of Bastrop county had not authority

to grant administration on the estate of Silsbee in the first instance; because, it is said, he did not have residence in that county at the time of his death. The evidence was conflicting as to the residence of the deceased. The witnesses for the plaintiffs testified that he had a fixed residence in Matagorda county; and the witnesses for the defense, on the other hand, testified that his residence at the time of his death was in Bastrop county. His permanent residence, doubtless, had been in the former county until shortly before his death. Whether he had effected a change of residence may be a matter of some doubt. However, it was competent for the Court at Bastrop to decide the question upon the petition for the grant of administration; and its decision is conclusive until reversed. It cannot be drawn in question in a collateral action. It conferred authority upon the administrator to act in the matter of the administration, until his power expired or was revoked by competent authority. And the Probate Court of Matagorda county had not authority to revoke it; nor could its subsequent grant of administration to another have that effect." (See also, *Lunson* v. *Crutchfield,* 2 Eng. 48, to the same effect.)

It seems to be admitted by Mr. Justice Burnett, in *Beckett* v. *Selover,* that the authorities cited by the respondent in that case—among them *Grignon's Lessees* v. *Astor* (2 How. U. S. 338) and *Leonard* v. *Leonard* (14 Pick. 283)—sustain the general proposition, "that the fact of residence is a jurisdictional fact *in pais,* and the Court necessarily passes upon and adjudicates such facts, and its decision, right or wrong, is conclusive in a collateral proceeding." It would seem, upon prniciple, that it should be so, for it is difficult to see why, if a fact upon which the jurisdiction rests be in parol—as inhabitancy and the like—the Court, passing upon the whole record and not restricted to any special finding, should not be held by the judgment to have passed upon this jurisdictional matter, and, passing upon it for all collateral purposes, be held to have settled it, as much as the main and more important matters of the litigation. Some one must decide these questions, and we do not perceive why the Probate Court should not as well decide them as any other jurisdiction. The shifting character of our population, and the difficult and embarrassing questions as to residence, etc., furnish a

strong reason for holding the rule as held in Virginia, Vermont, and other States, while the general importance of preserving titles from parol contestation adds weight to the other consideration already weighed in favor of the rule.

Judgment reversed and cause remanded.