## HALLECK *et al.* v. MOSS.

WHERE it has been shown in proper form to the Probate Court, that a sale of personal property of an estate is necessary to pay the debts, a statement in the order of sale that it is "perishable property and liable to assessment and taxation," may be treated as surplusage, and does not vitiate or affect the character of the order.

The validity of a sale of personal property made under an order of the Probate Court, cannot be attacked in a collateral action on the ground of an irregularity or defect in the order of sale, or proceedings under it. They can only be impeached by a direct action brought for that purpose.

Thus, in an action upon an indemnity against loss in a sale of stock by executors: *held,* that the defendants could not question the regularity of an order of sale made by the Probate Court, or of the sale made in pursuance thereof.

Where the defendant covenanted with executors, that if, in the course of administration of the estate, certain stock should be sold at public auction "upon reasonable notice," and should bring less than a certain amount, he (defendant) would pay the deficiency: *held,* that by the term "reasonable notice," was meant the general notice required in such sales by the Probate Act, and not any other or personal notice.

An action upon a written agreement to pay money upon demand, may be maintained without any previous actual demand.

In an agreement by defendant to indemnify the plaintiffs against loss upon a sale of stock, the former covenanted that if the proceeds of a sale were less than a certain amount, he would "make good the deficiency, *on demand,* after the said sale:" *held,* that an action for the deficiency might be maintained at any time after the sale, without a previous demand.

APPEAL from the Fourth Judicial District.

The plaintiffs were, in 1855, appointed executors of the estate of one Folsom, deceased, which estate, among a large amount of real and other personal property, included two hundred and fifty shares

of stock in the Sacramento Valley Railroad Company. November 12, 1855, the executors applied for a sale of some of the property, and in their petition stated that " The personal property of the testator consisting in stocks, a particular enumeration, description, and valuation whereof will be found in Exhibit " B," under the head of stocks, they do not deem it advisable to sell before they communicate with the legatees and learn their wishes on the subject, especially as much of the stock is very low and has scarcely any market value." And in an exhibit annexed to this petition under the head of stocks, appears : " Sacramento Valley Railroad, amount paid in $13,034 75." On the nineteenth day of February, A.D. 1857, the following agreement was entered into between the plaintiffs, as executors, and the defendant, J. Mora Moss :

" Articles of Agreement made and entered into this nineteenth day of February, 1857, by and between J. Mora Moss, party of the first part, and H. W. Halleck, A. C. Peachy, and P. W. Van Winkle, executors of the estate of J. L. Folsom, deceased, parties of the second part, Witnesseth, that whereas, the said estate and the said parties of the second part, in their capacity of executors as aforesaid, hold two hundred and fifty shares of the capital stock of the " Sacramento Valley Railroad Company," on which the said company has called for an unpaid assessment, amounting in the aggregate to the sum of seven thousand four hundred and thirty-three dollars and eighty-eight cents ; and whereas, the said executors have declined to pay said assessment, except upon a guaranty to thé effect hereinafter stated. Now, in consideration that the said executors have agreed to pay the said assessment, and for the further consideration of one dollar in hand paid to him by the said executors, the said Moss hereby covenants and agrees with the said Halleck, Peachy, and Van Winkle, executors as aforesaid, that if the said stock, in the course of the administration of said estate, shall be sold at auction, upon reasonable notice, the proceeds of said sale shall amount to as much as the assessment to be paid by said executors as aforesaid, together with an advance thereon of one per cent. ; and if the proceeds of said sale shall be less than the sum aforesaid, including the said advance, then the said Moss will

make good the deficiency to the said estate, on demand after the said sale.

" In testimony whereof the said J. Mora Moss has hereunto set his hand and seal, the day and year first above written.

  " Signed.     J. MORA MOSS. [L.S.]

" Witness, E. A. CASELLI."

Subsequently, one Donald Frazer, a creditor of the estate, filed a petition, praying that a portion of the real estate belonging thereto might be sold to satisfy his debt. The executors, March 7th, 1859, filed an answer to this petition, objecting to a sale of the real estate on the ground that there was still personal property unsold, and also in compliance with an order of the Court, a report, showing the then condition of the estate, and containing the following averment and petition:

" That on the twelfth day of November, 1855, they presented to this Court their petition, praying for an order authorizing them to sell certain portions of the said estate, setting forth its condition, the claims against it, etc., which said petition with exhibits annexed thereto, and made a part thereof, they pray may be held and considered as part of this report and petition. And the executors further represent, that the personal property of the estate comprised under the head of ' stock,' in said petition of twelfth November, A.D. 1855, ought to be sold, inasmuch as the same are liable to assessments, and most of them pay no dividends to the estate; and the executors pray the Court for an order authorizing them to make such sale."

Upon this petition, the stock mentioned in the agreement was sold. The notice of the hearing of the petition was as follows:

" Notice is hereby given, that H. W. Halleck, P. W. Van Winkle, and Archibald C. Peachy, having filed in this Court their report and account, as executors, with a petition for an order of sale of personal property of the estate of Joseph L. Folsom, deceased, the hearing of the same has been fixed by said Court, for Monday, the twenty-first day of March, 1859, at eleven o'clock in the forenoon of said day, of the March Term of 1859, at the court-room thereof, in the City Hall in the City and County of San

Halleck *v.* Moss.

Francisco; and all persons interested in said estate are notified then and there, to appear and show cause, if any they have, why said petition should not be granted."

And the order of sale by Probate Judge, as follows:

"Application having been made to the Court by the executors of the estate of J. L. Folsom, deceased, for an order of sale of certain personal property of the estate hereinafter mentioned by the petition, in writing, of said executors, filed herein on the seventh day of March, 1859, setting forth the facts showing such sale to be necessary; which application was, by the order of this Court, on that day made and filed, set for hearing upon the twenty-first day of March last, upon which day the said executors appeared by their counsel, Gregory Yale, Esq., and certain of the creditors of the estate appeared and were represented by their counsel, Eugene Casserly, Esq.; and due proof having been there made, to the satisfaction of the Court and filed herein, that notice of said application had been given according to law, the hearing of the said application was regularly continued from that time to this day by orders of this Court duly entered of record. And now on this twenty-fifth day of April, 1859, at eleven o'clock, A.M., to which time said application was duly adjourned by the last of continuances, aforesaid, the said parties appearing by their counsel, aforesaid, and no objections or exceptions having been filed, and no opposition having been made, and the Court, from an examination of the said matter, being satisfied that a sale of said property is necessary, and that the articles are perishable property and liable to assessment and taxation, it is hereby ordered, that the said executors be authorized to sell at public auction to the highest bidder, for cash, the personal property of the estate undisposed of, comprised under the heads of "Library," "Pictures," "Table and Bed Linen," and "Stocks," as set forth in their petition filed in this Court November 12th, 1855."

Notice of the sale was given by posting in three public places, as required by the Probate Act, and also by publication in two newspapers.

The stock brought $4,175, net $4,049 75, selling at sixteen and a half and seventeen and a half cents, and leaving a deficiency, on

the contract, of $3,458 47, for which the present action is brought on the contract. The market value of the stock, at time of trial, was shown to be thirty cents, or $7,500.

Bearing upon the question of notice to defendant, Moss, of the sale or notice to him of the deficiency and demand before suit brought, the only evidence is as follows:

" One Waller testified—" Thinks defendant, Moss, was at sales-room of auctioneers before the sale. Afterwards carried a note to defendant from Billings; the defendant afterwards came into the office, and I saw him conversing with Halleck and Billings. Billings was the attorney of executors."

Cross-examined—" Saw Moss at the salesroom on the morning of the day of the sale. I don't know whether he was there at the time of the sale of this stock."

One Sinton testified: " Moss was present in the morning before the sale. I don't know whether he was present during the sale of this stock. Catalogues were distributed in salesroom; Moss asked me to purchase a certain book for him." .

Cross-examined—" I think it more than probable, that Moss asked me to purchase the book, because he, Moss, was going away and could not be present at the sale."

Upon this evidence, the Court found, among other things, " that Moss was present at the sale and had personal notice thereof." The plaintiff had judgment for the deficiency, with interest from the day of sale, from which defendant appeals.

*Whitcomb, Pringle & Felton*, for Appellants.

I. This was not a valid sale " in the course of the administration of the estate," for it appears to have been sold as " perishable property," but long after " the term of the Court, to which the inventory is returned." That term is the only time, as the law then stood, at which sales of property, as " perishable " property, could be made. (See Wood's Digest, 406, Sec. 150.) The order of the Probate Judge recites " that the articles are perishable property, and liable to assessment and taxation." And the petition on which the sale is founded, says that the stock " ought to be sold, inasmuch as the same are liable to assessment and most of them

pay no dividends to the estate." We claim, therefore, that the sale was not a valid sale, and we insist that in order to recover against us, or our guaranty, they must show a valid sale, "in the course of the administration of the estate," before they can come upon us for a deficiency.

But more than this, we are entitled under the guaranty to a sale, under the circumstances and of the character contemplated by the parties to the contract. In the first place, it is clearly not within the spirit of the bargain to sell the property under pretense of its liability to the very danger we had, by the consideration of our guaranty, effectually provided against. The assessment, the payment of which we procured to be made, was the final assessment, and left the stock "full paid;" not liable to further calls. For after the amounts subscribed are all paid in, stock is not liable to forfeiture. (See Wood's Digest, 595, Sec. 13.) If by the inducements of our guaranty, we save the stock from all danger of perishing by assessment, and agree to pay any deficiency that may arise upon "a sale in the course of the administration of the estate," certainly "a sale in the course of the administration," means something else than a sale to avoid assessments. Whatever that expression may mean, it certainly cannot mean that very thing which both parties to the contract distinctly excluded from their minds by providing against.

We submit that it is clear, both from the nature of the contract and from the terms used, that the contracting parties meant to exclude, as a motive for sale, that "liability to assessment" or perishability upon which the sale was afterwards based, and that the guarantor is released from his guaranty.

"If there be any condition in the terms of the guaranty precedent to the liability of the guarantor, it must be strictly complied with or the guarantor will be discharged." (Story on Cont. 871.)

We insist that the words "in the course of the administration of the estate," were meant to designate a sale "necessary to pay demands against the estate." The words of the contract, "in the course of the administration," seem to have been used *ex industria*, in contrast with the threatened sale under pressure of assessment, to describe a deferred sale that might afterwards become necessary

from the wants of the estate." And to make the guarantor liable there must appear affirmatively to have been present demands against the estate, and, that the sale was ordered upon that ground, not any pretense of perishability, not any debts possible, future, or contingent, but only such debts or demands as made a sale then necessary, and a sale actually ordered upon the ground of necessity.

The respondents seek to avoid this argument by insisting that it sufficiently appears from the proceedings, that there were debts against the estate, and that the sale was properly conducted, to meet the requirements of the statute for payment of debts. But the character of the sale is determined by the application and the order. Neither petition or order speak of a necessity for payment of debts, but only of a necessity arising from perishability.

II.   The next ground of error relied on by the appellants is, the finding of fact that Moss was present at the sale and had personal notice thereof.

The evidence does not show any notice, whatever, to Moss, and it proves him not to have been at the sale. But if he was there before the sale and staid to the sale, it does not appear to have been in consequence of any previous, much less of any "reasonable notice." And his mere presence at the sale, would not have been a waiver of the want of notice. An appearance or personal presence, can only operate as a waiver of notice, where the only object of the notice is to procure the presence of a party. When a man has done or is doing what he is required to do, he waives objection. But where the notice is for some other thing than his appearance or personal presence, how can he be said to waive that other thing by his presence?

It will hardly be contended that the statutory notice by posting and publication, is the "reasonable notice" required by the contract. The words "upon reasonable notice," must mean "reasonable notice" to Moss, or they mean nothing at all. For a sale in the course of the administration of the estate, implies statutory notice. The addition of the words "reasonable notice," must mean something more than statutory notice. The party would naturally be anxious to add a condition of personal notice to the general con-

Halleck v. Moss.

ditions of the law.   The statutory notice was all-sufficient to secure a good attendance and bidders; but the statute would look out for his special contract, and so he adds the condition, " or reasonable notice," which are the every-day words of such contracts.   They have grown to be the familiar and short form of expression used in contracts of pledging, and are invariably used with reference to notice to the pledgor or guarantor.   As used in this contract, these words can mean only one of three things: the statutory notice, or notice to all the world, or notice to the guarantor.   The statutory notice is a necessary incident to an administration sale, and would not be intended.   Notice to all the world, would not be specially intended, for the law provides for that, as much as possible, in the statutory notice.   Notice to the party, himself, is the clear and only intention—notice to him long enough before the sale to enable him to prepare for it.

III.   The guarantor was entitled to notice of the deficiency of the principal fund, and of the amount of such deficiency.   (Chitty on Cont. 733.)

IV.   Plaintiffs should have made demand before suit brought for the amount ascertained to be due.   The want of such a demand is fatal; for the subject matter of the contract and the contract itself require it.   In ordinary cases of a money liability, as upon a promissory note or liquidated demand, no demand is necessary; the suit itself being sufficient demand.   But, where the liability is collateral to some other person or thing, a demand before action brought is necessary to fix the liability, and especially where the contract required it.   *Carter* v. *Ring* (3 Camp. 469) is a case directly in point.   Lord Ellenborough holding that in debt, on bond conditioned for the payment of a sum of money on demand, the plaintiff must prove an express demand before suit brought.   And Chitty on Cont. (734), after stating the common cases where no demand is necessary, says, " a different rule holds in the case of a bond with a penalty to secure the performance of a collateral act;" and in note *x*, " at all events, a surety is entitled to a demand where he engaged to pay on request."   (*Sicklemore* v. *Thistleton*, 6 M. & Sel. 9; *Lilley* v. *Hewart*, 11 Price, 494.)

*Gregory Yale*, for Respondent.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This case has previously been before this Court, and will be found reported in 17 Cal. 339—and it was there held, that the plaintiffs had failed to offer sufficient proof to sustain the judgment, in this, that they had failed to show any order of Court directing notice of the sale of the shares of stock to be published in any newspaper, and there was no proof that the notices had been posted as required by law, in the absence of such order. The case went back for a new trial, which has been had, and judgment again rendered for the plaintiffs, from which the defendants again appeal.

The record shows that on the twelfth day of November, 1855, the plaintiffs, as executors of the estate of J. L. Folsom, deceased, filed their petition in the Probate Court, praying for an order authorizing them to sell the personal property of the deceased, including among a large number, the stocks mentioned in the agreement, which is the foundation of this action. One Donald Fraser, a creditor of the estate, filed a petition in the Probate Court, praying for an order for the sale of real estate belonging to the estate. The executors, in their answer to this petition, show that all the personal property of the estate had not been disposed of, averring that of the stocks inventorized a part only had been sold. On the seventh day of March, 1859, in compliance with an order made by the Court in the matter of the petition of Donald Fraser, the executors filed a report and petition, in which they aver that " the personal property of the estate, comprised under the head of ' stocks ' in the petition of November 12th, 1855, ought to be sold, inasmuch as the same are liable to assessment, and most of them pay no dividends to the estate," and praying the Court for an order authorizing them to make such sale.

Notice of this application for an order to sell this property was duly given, and the hearing was fixed for the twenty-first day of March, 1859. All persons interested in the estate were notified to appear and show cause, if any they had, why said petition should not be granted. The matter was continued from time to time, but

no opposition was filed to the application, and on the twenty-fifth of April, 1859, the Court ordered that the executors be authorized to sell at public auction to the highest bidder, for cash, the personal property of the estate undisposed of, comprised under the heads of " stocks," etc., as set forth in their petition filed November 12th, 1855. The stock mentioned in the agreement was sold under and in pursuance of this order, on the eleventh day of May, 1859, notices of which, specifying the time and place of the sale, were posted up in three public places in the county. The stock sold for $4,049 75, after deducting expenses, leaving a deficiency under the contract of $3,458 47.

It is urged by appellants that this was not a valid sale " in the course of the administration of the estate," as required by the terms of their contract, because the order of sale recites " that the articles are perishable property, and liable to assessment and taxation," and because it does not appear that the sale was "necessary to pay any demands against the estate." This objection is not valid. The record sufficiently discloses the fact, that the petition for the sale and the order of sale were made under proceedings instituted by a creditor of the estate, to procure a sale of real estate for the payment of his debt. The answer of the executors to the petition of the creditor showed that all the personal property had not been sold, and under the statute (Wood's Digest, 406, Sec. 154) the real estate could not be sold until all the personal property had been duly disposed of. There was therefore a necessity for the sale of the personal property, and the executors properly filed their petition to obtain an order for its sale. The mere statement in the order that it was " perishable property, and liable to assessment and taxation," does not vitiate it. They are not necessary to the order, and are in truth mere surplusage.

Besides, these proceedings are not liable to be attacked in this collateral action. The Act of March 27th, 1858, (Statutes of 1858, 95) provides : " That the proceedings of the Courts of Probate, within the jurisdiction conferred on them by the laws, shall be construed in the same manner, and with like intendments, as the proceedings of Courts of general jurisdiction; and that the records, orders, judgments, and decrees of the said Probate Courts shall have

accorded to them like force and effect, and legal presumptions, as the records, orders, judgments, and decrees of the District Courts." The proceedings in this case relating to this sale took place after the passage of this act, and are governed by it. If they were defective or irregular in any way, they could only be attacked by a direct action brought for that purpose, and cannot be impeached in any collateral suit. (*Irwin* v. *Scriber*, 18 Cal. 499.)

In the case of *Spriggs' Estate* (20 Cal. 121), it was held, that an order for the sale of real property of an intestate, made by the Probate Court, after notice to all the parties interested, in the manner required by the statute, and after the examination of the proofs presented, is an adjudication that the sale of the property described is necessary, and unless appealed from, is conclusive and binding upon the administrator and upon all parties interested in the estate. And the same point was reaffirmed in the case of *Haynes* v. *Meeks* (20 Cal. 288).

In this case the defendants could have appeared under the notice given to all parties interested, and if they had good grounds therefor, could have opposed the granting of the order for the sale of this stock. Not having done so, they cannot object to it in this proceeding.

The next objection is to the finding of fact that the defendant, Moss, was present at the sale, and had personal notice thereof, which, it is insisted, is not sustained by the evidence. The record discloses the following evidence upon this point: Waller, one of the witnesses, states that he thinks that defendant, Moss, was at the salesroom of the auctioneers before the sale ; saw Moss at the salesroom on the morning of the day of the sale ; don't know whether he was there at the time of the sale of this stock. Sinton, one of the auctioneers, states that Moss was present in the morning before the sale ; don't know whether he was present during the sale of these stocks ; catalogues were distributed in the salesroom ; Moss asked me to purchase a certain book for him. This witness, also states, that one of the notices of the sale was posted up at the doors of their auction rooms. From this evidence, the Court below was justified in finding that the defendant, Moss, knew of the sale ; and, whether he was present at the time of the sale of this par-

ticular stock, we do not deem very material. If he knew of the sale he could have been present, had he deemed it important or necessary.

But it is urged, that direct personal notice to Moss was necessary under the contract. The portion of the agreement relied upon to sustain this point reads as follows: " The said Moss hereby covenants and agrees with the said Halleck, Peachy, and Van Winkle, executors as aforesaid, that if the said stock in the course of the administration of said estate shall be sold at auction, *upon reasonable notice*, the proceeds of said sale shall amount to as much as the assessment to be paid by the executors as aforesaid," etc. Appellant contends, that the " reasonable notice " mentioned in the contract, means " reasonable notice " to him personally, and not the general notice to all persons of the sale required by the statute. It is evident that the term " reasonable notice " is the general notice to be given to the public, who are by it requested to attend and bid at the sale. If it had been the intention of the parties that personal notice of the sale should be given to him, the defendant who executed the agreement should have so expressed it in plain terms. The instrument having been executed by him, it is his fault if there is any uncertainty in its expressions. He cannot complain if, in this respect, it is construed against him. But it is evident, as we have shown, that he knew of the sale, and if the proper notices had not been given, or he had any other objections to it, he could have appeared and presented them and enabled the executors to cure any defects, or obviate any valid objections. Nor did the defendant show, that he suffered any damage for want of notice. He offered no evidence to show that the stock sold for less than its market or its intrinsic value. It sold for sixteen and a-half and seventeen and a-half cents on the dollar of its nominal value. To be sure, one witness swore that at the time of the trial, September 5th, 1861, the market value was thirty cents on the dollar, but that was nearly two years and a-half after the sale, and forms, therefore, no proper criterion of its value at the date of the sale. The time required by the statute for the posting and publication of the notice is a legal determination of the meaning of the words " reasonable notice," when used in connection with sales of this character.

The next and last point raised by the appellant is that no notice of the deficiency was ever given to him by the plaintiffs, and no demand ever made upon him by them for the payment of such deficiency. To support this, he claims that the contract sued on is in the nature of a guaranty, and that he is, substantially, a surety, and as such entitled to notice and demand before suit. We cannot see anything in the contract which gives him the rights of a guarantor or surety. We might inquire whose ability or liability to pay does he guarantee, or for whom is he surety? The contract is solely his own, and in it he agrees that certain stock sold in a certain manner shall amount to a certain sum; and then he agrees as follows: " and, if the proceeds of said sale shall be less than the sum aforesaid, including the said advance, then the said Moss will make good the said deficiency to the said estate, on demand after the said sale." The Court has found that the defendant had notice of the sale, and it would seem from this that he must have known of the deficiency, which he had agreed to pay. One of the witnesses states, that after the sale, he carried a note from Billings, the attorney of the executors, to the defendant, and that defendant afterwards came to the office, and he saw him conversing with Halleck and Billings, but this is entirely insufficient, in the absence of all proof of the contents of the note, or the subject of the conversation, to prove a notice or demand.

The rule is well settled that in an action upon a promissory note, payable on demand, it is not necessary to aver or prove an actual demand before bringing suit, the institution of the suit being a demand. (*Zeil* v. *Dukes*, 12 Cal. 479; Story on Prom. Notes, Sec. 29.) We see no good reason why the same rule should not be applied to other instruments for the payment of money, as well as to promissory notes, and it has been so applied in several cases. (*Gibbs* v. *Southam*, 5 Barn. & Adol. 911; *Husbands* v. *Vincent*, 5 Har. 268; *Baughan* v. *Graham*, 1 How. 220; *Wyman* v. *Fowler*, 3 McLean, 467.)

The case of *Dyer* v. *Rich* (1 Met. 180) was very similar to the present, and the Court held that no demand was necessary before suit. That was an action upon an agreement, by which the defendants agreed that one Blake should pay three certain promis-

sory notes when due, and upon his neglect or refusal they would pay the full amount of the notes, with interest and costs; and, further, that the plaintiff should within two years receive certificates of ten shares of full paid stock in a certain company, and that within that time a certain amount of the capital stock of said company should be paid in by the other stockholders; and the agreement concludes as follows: " And that if, at the expiration of the said two years, the capital stock actually paid in, including the agreed value of said patent right, shall not be equal to the sum of five hundred dollars on each share then issued, we will forthwith *upon demand*, pay the said Dyer, his executors, administrators, and assigns, such further sum or sums of money as, in addition to those which shall have been paid in as aforesaid, shall amount to the sum of five hundred dollars on each of said shares." The Court says upon this point: " The stipulation on the part of the defendants was that, if within two years the plaintiff did not receive a transfer of ten such shares, they would pay the difference in cash, on demand. No demand of the shares, therefore, was requisite ; and, as to the demand provided for in the agreement, it was to pay money on demand. And the *sœpe requisitus* contained in the writ, is all the demand necessary to be averred, and by a well-known and familiar rule of law, no other proof of that averment is required." The rule here laid down seems a just and proper one, and, as the present case comes within it, it should be governed by it.

The judgment is therefore affirmed.