## THE PEOPLE v. PERRY MORRISON.

LANDS, within this State, belonging to the United States, are, both by the provisions of the State revenue law, and by the terms of the Act of Congress admitting California into the Union, exempt from State taxation.

In order to hold improvements upon public lands liable for a State tax the assessment must be upon the improvements *eo nomine* and not upon the land itself.

APPEAL from the County Court of Alameda County.

The facts are stated in the opinion.

*E. W. F. Sloan*, for Appellant.

I. The assessment in question is without authority of law and is void: because 1st, the property in respect to which it was made is, by the revenue law, expressly exempt; 2d, it is exempt from taxation and assessment by the express terms of the compact between this State and the United States, upon which this State was admitted into the Union.

1. The Revenue Act of 1861, Sec. 5, might, upon a superficial view seem to warrant the assessment in question. The appellant was in possession of the land and claims an ultimate right of pre-emption thereto. But the whole act must be construed together; and by Sec. 4 " lands belonging to the United States " are exempt in express terms.

If it had been the intention of the Legislature to treat the possession of public lands belonging to the United States as an estate or property in the hands of the possessor, properly subject to taxation, they would have qualified the designation of those exempt from assessment by words of limitation, such as : " lands belonging to the United States not in the possession or occupation of any one." But there is no such qualification in the act.

The " estates," therefore, mentioned in Sec. 5 must be supposed to refer alone to estates in lands which, by grant, confirmation, sale, or otherwise, have become private property, and which cannot be lands belonging to. the United States. (*Dixon* v. *Porter*, 1 Cash. 23, Miss. 84 ; *Smith* v. *The State*, 5 Texas, 397.)

2. The Act of Congress, admitting this State into the Union, imposed certain terms and conditions, which being accepted by the State, are in the nature of a compact, which cannot be disregarded by the people of the State. (1 U. S. Stat. at Large, 452, Ch. 50, Sec. 3.)

Similar terms were imposed upon each of the States formed within the Northwest Territory by the Ordinance of 1787, and I have not been able to find a single instance, in which either of those States has attempted to lay a tax upon public lands of the United States, on the ground that it was possessed or occupied by a person or company.

In *Carroll* v. *Stafford* (3 How. 441) the right of the State of Michigan to levy a tax upon land already sold by the United States to a private individval, and actually paid for, but prior to the issuance of the patent to the purchaser, was questioned, but the right was sustained.

It is well known, that under our land system the purchaser often receives his certificate of sale for months and even years, before a patent is issued. Upon payment of the purchase money and the

receipt of a duplicate certificate acknowledging that fact and describing the land sold, the purchaser becomes to all intents and purposes the proprietor.    Indeed, most of the Western States, by express legislation, or otherwise, regard the certificate of entry and sale as conferring a legal title.

It was upon this view of the case in *Carroll* v. *Stafford* that the decision was made.   " Now," says the Court " lands which have been sold by the United States, can, in no case, be called the property of the United States.    They are no more the property of the United States than lands patented.    So far as the rights of the purchaser are considered, they are protected under the patent certificate as fully as under the patent.    (p. 461.)

It will be seen, that the right of the State of Michigan to tax the land, or the party in possession of it, in respect to the land so possessed, prior to the actual sale and payment of the purchase money, was not even contended for.

The compact of admission between Ohio and the United States, secured to the purchasers of public lands in that State, an exemption for five years after the date of their respective purchases.    And, though that State claimed and exercised the right of taxing all other lands within her limits, even before they became the property of private individuals, yet she never pretended to violate or disregard the terms of the compact by laying a tax upon lands sold by the United States, until the period of five years had elapsed. (*Douglass* v. *Dangerfield*, 10 Wilcox, 154–156.)

I am not able to say, in how many other States a similar exemption may have been secured by compact; but, by an Act of Congress, approved January 26th, 1847, the assent of the United States was given to the several States admitted into the Union prior to April 24th, 1820, to impose taxes upon all lands thereafter sold by the United States, from and after the day of sale.

That act was deemed necessary to relieve those States from the restraint imposed by the compact of admission, as to all lands thereafter sold.    No State, as far as my researches have extended, has ever attempted, by legislation or otherwise, to violate the terms of the compact.    We are not to construe the Revenue Law of 1861 in such a way, as to place the State of California in that attitude.

II. The fact that the appellant claims a right of preëmption, cannot vary the case. The right of preëmption depends upon prior occupation, cultivation, and improvement. It is not the subject of traffic or trust, so long as it is a mere right to purchase at the prescribed price; a right which can only be preserved by continuous occupation and improvement. So soon as the possessor actually preëmpts, so soon as he pays the purchase money and gets his certificate thereof, it ceases to be a mere preëmption right or claim, and then becomes subject to taxation. Until that time, however, the land so occupied is land belonging to the United States. In attempting to lay a tax upon such land, the State would violate the terms of the compact in another particular. It would, if carried out, interfere with the primary disposal of the public lands on the part of the United States. It would defeat the operation of the preëmption laws, which provide one of the modes of primary disposition. The wealth produced by the cultivation of the public lands is the legitimate subject of taxation, and has contributed its thousands to the revenues of the State. The lands, so long as they remain the property of the United States, are exempt.

*W. W. Crane*, for Respondent.

"The lands belonging to the United States" (*vide* Revenue Laws of 1861, 420, Sec. 4), within this State, are those held by the Federal Government as property, and as to those lands the General Government occupies a position analogous to a private proprietor. This being the case, and there being no compact or legislation to the contrary, the United States, like all other proprietors, would be liable to assessment on account of its property and would be called upon to pay its quota of taxation.

But to avoid a consequence of this character, the Act of Congress, admitting this State into the Union, provides that the State of California "shall never lay any tax or assessment of any description upon the public domain of the United States," evidently meaning that as between the State of California and the United States the former shall not exact against the latter any public dues. To fulfill the compact thus entered into, this State has uniformly ex-

empted from taxation " all lands belonging to the United States." But as between Perry Morrison, the appellant here, and the State of California, an entirely different relation exists. He cannot claim an exemption which the latter has only granted in favor of another proprietor, viz.: the United States. The whole scope of our revenue system is, to exact the public dues, primarily, from the citizen, and secondarily, from the property in respect to which he is assessed. The assessor is required to prepare a list in which shall appear: 1st. The names of the taxable inhabitants. 2d. All real estate taxable to each inhabitant. (Revenue Law of 1861, Sec. 20.)

Real estate is defined in Sec. 5 (p. 421): " The term ' real estate,' whenever used in this act, shall be deemed and taken to mean and include the ownership of, or claim to, or possession of, or right of possession to, any land within the State."

The form of the assessment roll, which is given in Sec. 20 (p. 426), has in the first column the tax payer's name, and in the second the description of the property, indicating plainly that the assessor has fulfilled his duty when he has given the tax payer's name, and designated the lands in which he has an ownership, or claim to, or possession of, or right of possession to. Nothing in the act requires this officer to designate the quantity or extent of the tax payer's interest in the lands described. If the full value of the fee be assessed when in fact the tax payer has merely a possessory right in the premises, a remedy is at hand, by an application to the Board of Equalization (*vide* Sec. 23, p. 427) to change and correct the valuation. It would be imposing a very onerous task upon the assessor to compel him to investigate and determine the character of each tax payer's title to lands in possession or claimed by him.

If, as in the case at bar, the tax payer be in possession of lands belonging to the United States, and he fails to pay the taxes assessed to him, in respect to such lands, and a suit is brought against him and the land to recover the amount due, a judgment is had and the property sold by the Sheriff, the purchaser would not obtain the fee from the United States, but only the right, title, or interest that the delinquent had in the premises. If the interest is only the right of

possession, the buyer would get nothing more. As against all the world but the United States the appellant was the owner of the premises sued. He can maintain any action hinging upon the possession. He can sell or mortgage his possessory rights, and he even has an equity as against the United States, that is, a preëmptor's equity. Why should he not be taxed for such lands? No sound rule of public policy can be urged why he should not. On the contrary, if the citizen be taxed upon the values he has, then appellant's possession, which has a value, is taxable.

II. The decisions of the Supreme Court of this State sustain the position advanced by respondents. *Hicks* v. *Bell* (3 Cal. 227) holds that, as to the ownership of the public lands, the United States only occupy the position of any private proprietor, with the exception of an express exemption from State taxation. *The State* v. *Moore* (12 Cal. 69) holds that, notwithstanding the gold mines are the property of the United States, the interest of the possessor is subject to taxation, as such possessor has a qualified ownership in his claim.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring specially.

This is an appeal from a judgment for taxes, rendered by the County Court of Alameda County. The action was commenced before a Justice of the Peace, to recover the sum of sixty dollars, State and county taxes upon a tract of one hundred and sixty acres of land, occupied by the defendant as a settler upon the public domain of the United States. Judgment was rendered against the defendant by the Justice of the Peace, from which he appealed to the County Court, where it was affirmed, and he now appeals to this Court, alleging that the property, being a part of the public domain of the United States, is not liable to be taxed by the State of California.

An agreed statement of the facts was filed in the case, by which it was agreed, among other things, substantially, that the land was a portion of the public land of the National Government ; that the defendant had for a long time been in the actual occupation of it, residing upon, using, and cultivating the same for agricultural pur-

poses, without claim of title, except such as arises from possession and occupation; that the taxes levied upon the improvements upon the land and defendant's personal property had been paid, and that the taxes sued for were levied upon the land and not the improvements.

A copy of the assessment appears in the transcript which shows that the property was described as follows: " A tract of land bounded on the north by the lands of D. D. Herrion, on the east by the lands of William Morrison, on the south by lands of Overacker, on the west by the land of Tyson;" one hundred and sixty acres, valued at $2,000.

The appellant claims that the assessment is void: 1st. As being exempt from taxation by the revenue law. 2d. As being exempt by the compact between this State and the United States, upon which California was admitted into the Union; that the judgment rendered by the Court below is, therefore, erroneous, and should be reversed.

1. Is the property exempt from taxation under the revenue laws of this State? Sec. 4 of the Revenue Law of 1861 provides, among other things, that " all property, of every kind and nature whatsoever, within this State, shall be subject to taxation, except: *First*—all lands and lots of ground, with buildings, improvements, and structures thereon belonging to the State, or to any municipal corporation, or to any county of the State, *and all lands belonging to the United States,* or to this State; and all buildings and improvements belonging to the United States, or to this State."

Sec. 5 of the same act provides that: " The term ' real estate,' whenever used in this act, shall be deemed and taken to mean and include, and it is hereby declared to mean and include, the ownership of or claim to, or possession of or right of possession to, any land within the State; and the claim by, or possession of any person, firm, corporation, association, or company, to any land, shall be listed under the head of real estate."

The assessment in this case is of the land itself, and not of the possession or right of possession of the defendant, and being admitted to be " land belonging to the United States," it is clearly exempt from taxation by the revenue act.

2. Is it exempt from taxation under the Act of Congress admitting the State of California into the Union ?

Sec. 3 of that act, among other things provides, " that the said State of California is admitted into the Union upon the express condition that the people of said State, through their Legislature or otherwise, shall never interfere with the primary disposal of the public lands within its limits, and shall pass no law or do no act whereby the title of the United States to, and right to dispose of the same, shall be impaired or questioned ; and *that they shall never lay any tax or assessment of any description whatever upon the public domain of the United States*," etc.

The evident object of this provision is to encourage the settlement of the public lands, and thus secure their speedy sale.   The act is plain and explicit in its terms, and leaves no room to doubt the intention of Congress.   The object is a worthy one, for the heavy expense of cultivating and improving vacant lands soon exhausts the means of the settler, unless he be wealthy, which that class seldom are.   It is an inducement held out to the citizen to undertake the hardships and toils of a pioneer life, bring the public domain under cultivation, and thus increase the wealth of the country. The exemption is generally only for a few years, until the surveys can be perfected and the land brought into market.   The State has wisely coöperated with the National Government by expressly exempting the land from taxation by her revenue laws.

If this judgment should be affirmed, and the public officers should proceed and sell the land, the purchaser would obtain no title to the premises, as has been already decided by this Court.   In the case of *Hall* v. *Dowling* (18 Cal. 621), Justice Baldwin, in delivering the opinion of the Court, uses this language : " We cannot see that the plaintiff makes out title through the tax deed ; for this seems to have been public land of the United States, and therefore could not be sold for taxes.   If the taxing of the improvements were proper, then the deed, etc., should show this, and not a sale of the fee or a taxing of the land itself."   In the present case it is clear that the fee of the land is taxed, which is contrary to law, and void.

We do not intend, by this opinion, to pass upon the principles laid down by this Court in the case of *The State of California* v. *Moore*

(12 Cal. 56). The questions there decided differ entirely from the present one.

The judgment is reversed, and the action is ordered to be dismissed.

NORTON, J.—The exemption of "all lands belonging to the United States" from taxation by the Revenue Act of 1861, in pursuance of the condition in the Law of Congress admitting this State into the Union, "that they shall never levy any tax or assessment of any description whatever upon the public domain of the United States," renders any tax invalid which is imposed upon any portion of the public lands of the United States within this State. Although the definition of the term "real estate" given in Sec. 5 of the Revenue Act, embraces the "possession of" land, and by Sec. 20, all the "real estate" is to be assessed, this obviously refers to a possession of land which is liable to taxation. The tax is imposed by the first section, and that is imposed only on lands "not by this act exempted from taxation." Church and school lots, and lots used for other purposes of a like general nature, and which are exempted by Sec. 4 from taxation, are certainly not liable to be taxed, because, being in the possession of some individual or corporation, they would fall within the definition of "real estate" as given by Sec. 5. This view is also obvious from the distinction made in Sec. 20, between "improvements on real estate," and "improvements on public lands." Public lands are thus spoken of as being different from the real estate which, under this act, is subject to taxation.

I agree, therefore, that the judgment should be reversed, and the action dismissed.

COPE, C. J.—I am of the same opinion as my associates as to the invalidity of the assessment in question, and concur with them in the judgment of reversal.