[No. 13436.   In Bank. — September 29, 1890.]

ISAAC GOLDTREE ET AL., RESPONDENTS, v. A. Mc-
ALISTER, APPELLANT.

ESTATES OF DECEDENTS — FOREIGN PROBATE OF WILL — AUTHENTICATION
— DOMESTIC PROBATE — COLLATERAL ATTACK — EJECTMENT — EVI-
DENCE. — The question as to whether or not a will had been duly proved
and allowed in a foreign country or state, as expressed in section 1322 of
the Code of Civil Procedure, is a fact which a court of this state enter-
taining jurisdiction to admit such will to probate must find from the
evidence, and if the court found this fact upon insufficient evidence or
without proper authentication of the foreign probate of the will, or with-
out competent evidence, and thereupon proceeded to exercise jurisdiction,
the action of the court in this respect is not void, but merely erroneous,
and subject only to direct attack upon appeal, and is not open to collat-
eral attack in an action of ejectment in which the probate proceedings
had in this state upon proof of such foreign probate are introduced in
evidence to show title under the will.

ID. — ADJUDICATION OF JURISDICTIONAL FACT. — Conceding that the au-
thentication of the foreign probate of such will is a jurisdictional fact, yet
it belongs to that class of jurisdictional facts which the court must find
from the evidence, and its decision thereon, whether erroneous or not, is
conclusive as against a collateral attack.

FORECLOSURE OF MORTGAGE — VENUE — LAND IN TWO COUNTIES — PRE-
SUMPTION — SALE OF WHOLE LAND IN ONE COUNTY. — A mortgage of
land may be completely foreclosed in any of the counties in which any of
the mortgaged property is situated, and where land situated in two coun-
ties was sold under foreclosure proceedings by the sheriff of the county in
which the proceedings were instituted, it will be presumed that the mort-
gaged property consisted of one body of land situated partly in each
county, where the contrary does not appear, and that the sheriff was
authorized to sell and convey the whole premises in such suit.

ID. — COLLATERAL ATTACK UPON FORECLOSURE SALE. — Conceding that the
decree authorizing the sale of the mortgaged land to be made wholly in
the county in which foreclosure was had was erroneous, such error could
not make the decree void, or render it or the sale in pursuance thereof
subject to collateral attack.

ID. — WHAT FORECLOSURE INVOLVES — SALE AND DEED. — The foreclosure
of a mortgage embraces the sale of the property and the execution of the
sheriff's deed as well as the decree of the court ordering the sale, and a
mortgage cannot be said to be foreclosed until the mortgagor's right of
redemption is cut off.

APPEAL from a judgment of the Superior Court of
Kern County.

The facts are stated in the opinions.

*William Shipsey,* and *Graves, Turner & Graves,* for Appellant.

The sale and deed of land in Kern County by the sheriff of San Luis Obispo County, under the foreclosure decree, are void. (Freeman on Executions, sec. 289, and authorities there cited.) The " trial " provided for by section 392 of the Code of Civil Procedure does not include a sale on execution, which must be made by the proper officer of the county where the land is situated. (Code Civ. Proc., secs. 684, 687, 692.) The cross-complaint shows a right in defendant to control the legal title, acquired by plaintiff from the state, and hold plaintiff as trustee thereof for defendant. (*Stark* v. *Starrs,* 6 Wall. 402; *Johnson* v. *Towsley,* 13 Wall. 72; *Cumens* v. *Cyphers,* 56 Cal. 383; *Salmon* v. *Symonds,* 30 Cal. 307; *O'Connell* v. *Dougherty,* 32 Cal. 458; *Estrada* v. *Murphy,* 19 Cal. 272; *Clark* v. *Lockwood,* 21 Cal. 220; *Emeric* v. *Penniman,* 26 Cal. 124; *Castro* v. *Hendricks,* 23 How. 442; *Brush* v. *Ware,* 15 Pet. 93.) It is familiar doctrine that a will is not admissible in evidence until first admitted to probate by a court having jurisdiction to do so. (Schouler on Executors, sec. 58; *Castro* v. *Richardson,* 18 Cal. 478.) If Jonathan Thompson left a will, it was a domestic one,—domestic to the state of California. A will is " domestic " to that state or country of which the testator was a resident at the time of his death, and is " foreign " to all other countries and states. Residence at death is the test. It makes no difference where the will was made, or where the testator died. (Schouler on Executors, sec. 57; 3 Redfield on Wills, 2d ed., 12, 13.) The English court had no jurisdiction to grant original probate of a will domestic to the state of California, and the California court had no jurisdiction to grant auxiliary probate of such a will. Being a domestic will, the original (not an authenticated copy) should have been produced and admitted to probate in San Luis Obispo County, California. That court

had exclusive original authority to admit Thompson's will to probate, and it had no jurisdiction to admit an authenticated copy. (Code Civ. Proc., sec. 1294; Schouler on Executors, sec. 57; *Hood* v. *Lord Barrington*, L. R. Eq. 218; *Carpenter* v. *Denoon*, 29 Ohio St. 379; *Campbell* v. *Sheldon*, 13 Pick. 8; *Ives* v. *Allyn*, 12 Vt. 589; *Bromley* v. *Miller*, 2 Thomp. & C. 575; *Porter* v. *Trall*, 30 N. J. Eq. 106; *Converse* v. *Starr*, 23 Ohio St. 491; *Manuel* v. *Manuel*, 13 Ohio St. 459; *Wallace* v. *Wallace*, 3 N. J. Eq. 616; *Bate* v. *Incisa*, 59 Miss. 513; *Sturdivant* v. *Neill*, 27 Miss. 157; *Morris* v. *Morris*, 27 Miss. 847; *Stark* v. *Parker*, 56 N. H. 481; *Bowen* v. *Johnson*, 5 R. I. 112; 73 Am. Dec. 49; *Alexander's Will*, 1 Tuck. 114; Schouler on Executors, sec. 57; *Lindley* v. *O'Reilly*, 50 N. J. L. 636; 7 Am. St. Rep. 802.) The foreign probate was not authenticated as required by sections 1323, 1324, and 1906 of the Code Civil Procedure, and the record shows a total want of jurisdiction, rendering the probate proceedings in this state entirely void. (*Whitwell* v. *Barbier*, 7 Cal. 54.)

*J. M. Wilcoxon,* and *W. H. Spencer,* for Respondents.

Proceedings to probate a will are *in rem,* and the jurisdiction of the probate court being exclusive in regard to all matters pertaining to the settlement of estates of deceased persons, the decrees of such courts upon the probate of wills and issuing letters testamentary are absolutely unimpeachable, and conclusive in all other courts, both in law and equity. (3 Redfield on Wills, 3d ed., 71; Freeman on Judgments, 1st ed., sec. 608; Wells on Res Adjudicata, sec. 426.) The petition and findings show the requisite jurisdictional facts. When the petition praying the probate of the will was filed with the certified copy of the will, the court acquired jurisdiction to proceed, no matter what kind of a certificate was attached to the will. (*Estate of Warfield*, 22 Cal. 51.) The order probating the will itself is conclusive upon the defendant, as well as all others. (Code Civ.

Proc., sec. 1908, subd. 1; see also Code Civ. Proc., sec. 1333; *State* v. *McGlynn*, 20 Cal. 234; 81 Am. Dec. 118; *Kearney* v. *Kearney*, 72 Cal. 591; see note to *Street* v. *Augusta Ins. etc. Co.*, 75 Am. Dec. 722; *Vanderpoel* v. *Van Valkenburgh*, 6 N. Y. 190; *Irwin* v. *Scriber*, 18 Cal. 505; notes to *Schultz* v. *Schultz*, 60 Am. Dec. 353, and cases cited; *Grignon* v. *Astor*, 2 How. 319.) The court has jurisdiction over a will admitted to probate in a foreign country (Code Civ. Proc., secs. 1322, 1324), and the sections of the code cited establish merely the mode of procedure for having them "allowed" in our courts. The question as to whether the will probated was a foreign or a domestic will has no bearing on the case. The court had jurisdiction of the subject-matter, whether a foreign or a domestic will, and its adjudication of the matter is conclusive. Section 1324 of the Code of Civil Procedure provides for proof upon the hearing; and it may have been that the court received evidence of the foreign probate in accordance with section 1907 of the Code of Civil Procedure. Jurisdiction attached upon filing the petition, and what purported to be a certified copy of the will. Any errors subsequently occurring cannot be the subject of attack now. (*Haynes* v. *Meeks*, 10 Cal. 110; 70 Am. Dec. 703; *Luco* v. *Commercial Bank*, 70 Cal. 339; *Irwin* v. *Scriber*, 18 Cal. 505-508; *Koutz* v. *Van Clief*, 55 Cal. 345.) The cross-complaint fails to state any cause of action, and the demurrer thereto was properly sustained. The patents of the state to plaintiffs as trustees of the will of the estate of Thompson are conclusive of the legal title in ejectment, and defendant cannot assail them collaterally, and alleges no fact entitling him to control them in equity.

The COURT. — The judgment appealed from in this case was affirmed January 31, 1890. A rehearing was granted, and the case has been reargued in printed briefs.

We have carefully considered the arguments of the learned counsel for appellant on the rehearing, but find nothing in them having the effect to change the former opinion.  It is true that section 5 of article 6 of the present constitution was inappropriately cited in that opinion to sustain the foreclosure sale, made before the present constitution was adopted; but the validity of that sale is supported by section 392 of the Code of Civil Procedure, which was also cited.  On the facts stated in the cross-complaint, there should be no question that it must be presumed that the district court had jurisdiction of the action to foreclose the mortgage, and consequently power to order a sale of all the mortgaged property in one parcel, since it must be presumed that it consisted of one body of land situated partly in San Luis Obispo County.  But counsel for appellant contend, on rehearing, that, conceding the jurisdiction of the district court to decree a sale, it should have ordered that part of the land situated in Kern County to be sold in Kern County.  In this we think counsel is mistaken, for reasons stated in the former opinion; but admitting, for the sake of the argument, that they are right, yet it seems that they make only a case of error in the exercise of admitted jurisdiction which did not make the decree void, or subject to the collateral attack here made upon it.  If the decree was not void, it authorized the sheriff of San Luis Obispo County to make the sale and to execute the deed; for it is averred in the cross-complaint that the sheriff made the sale and executed the deed in accordance with the decree of the court, and not otherwise.

Counsel further contend, on the rehearing, that if there was any defect in the cross-complaint, it was only that of uncertainty or ambiguity, for which a general demurrer should not have been sustained; but there was a deficiency of substance necessary to constitute a cause of action.  To constitute a cause of action, the cross-

complaint must have stated facts showing, or from which it might be inferred or presumed, that the foreclosure sale was void; but instead of this, it stated facts from which it must be presumed that the sale was authorized and valid. For the reasons here and in the former opinion stated, the judgment is affirmed.

The following is the opinion above referred to, rendered in Department Two on the 31st of January, 1890:—

VANCLIEF, C.—This is an appeal from a judgment for plaintiffs in an action of ejectment.

The plaintiffs sued in the character of trustees of the estate of Jonathan Thompson, deceased, under his last will; and the first question to be considered arises from a contest upon the trial as to whether or not the plaintiffs were entitled to sue in that character. The defendant having denied the will, the plaintiffs, to prove it, offered in evidence a certified copy of the proceedings of the probate court of the county of San Luis Obispo in the matter of the estate of Jonathan Thompson, deceased, commenced by the petition of John Thompson and John A. Patchett, filed December 2, 1875, alleging, in substance, that the testator died in the county of Monterey, California, leaving estate in the county of San Luis Obispo; that his will had been duly proved and allowed in the queen's probate court of England, at London, on the twenty-eighth day of October, 1875, which court had competent jurisdiction for that purpose; that the will was executed in conformity with the laws of this state; the character and value of the property in this state; who were the heirs and devisees residing in this state and in England; that petitioners and Thomas Grierson of England were named in the will as executors thereof, and that they consented to act as such; and praying that the authenticated copy of the will be admitted to probate, allowed, and recorded.

With this petition was exhibited and filed what pur-

ported to be a copy of the will as probated in the English court, headed as follows: —

"*Extracted from the principal registry of the probate division of her Majesty's high court of justice. On her Majesty's court of probate.*"

Added and subscribed to this copy of the will was the following: —

"(Affidavit filed that testator was a British subject and that he made his will in England.)

"Proved at London 28th October, 1875, by the oath of Thomas Grierson, one of the executors to whom admon. was granted. Power was reserved of making the like grant to John Andrew Patchett and John Thompson, otherwise John Brown Thompson, the other executors.

"I certify that this copy has been examined with the original will deposited in the registry, and that it is a true copy thereof.

"Examined, J. W. S.

"DAVID HENRY OWEN,
"(14 fos., W. J. O.)
"Registrar."

("The seal of her Majesty's high court of justice, principal registry, probate division.")

It is admitted that due notice of the time and place appointed for hearing the petition and for probate of the will in the California court, as prayed for in said petition, was made and published according to law.

On the day appointed the probate court in which said petition was filed made the following order: —

"The petition of John Thompson and John A. Patchett, heretofore filed in the above-entitled matter, praying for admission to probate of a document purporting to be a duly authenticated copy of the last will and testament of said deceased, and to be appointed executors of the said estate, and that letters testamentary thereon be granted to said petitioners, coming on regularly to be heard on this twenty-seventh day of December, 1875.

"On reading and filing of the publication and services of notices of the present hearing as required by order of this court, and it appearing to the court that due notice has been given according to law, and that the aforesaid document is a duly authenticated copy of the last will and testament of said deceased, together with a copy of the probate thereof, said will having been executed in the kingdom of Great Britain and Ireland, in conformity with the laws of this state, and thereafter, to wit, on the twenty-eighth day of October, 1875, having been proved, allowed, and admitted to probate in the queen's probate court, in the city of London, England, and it having heretofore, to wit, upon the appointment of the special administrator of said estate, appeared that the said deceased died on the fifth day of September, 1875, being at the time a resident of the county of San Luis Obispo, having estate, real and personal, therein; and the said John Thompson and John A. Patchett being of lawful age and competent to serve as executors:—

"It is ordered that the paper heretofore filed purporting to be a copy of the last will and testament of said deceased be admitted to probate as the last will and testament of said deceased; that the said John Thompson and John A. Patchett be and they are hereby appointed executors of said estate, and that letters testamentary issue to the said petitioners upon their taking the oath as required by law.

"Dated December 27, 1875.

"McD. R. Venable, Probate Judge."

Letters testamentary were accordingly issued to John Thompson and J. A. Patchett, and they duly qualified.

The will also appointed Thompson, Patchett, and Grierson trustees of the estate, and devised the property to them for the uses and purposes expressed in the will; so that, upon the settlement of the estate in the probate court, the residue of the property, including the testator's

right and title to the demanded premises, was, on March 10, 1877, distributed to them.

On November 9, 1884, by order of the superior court duly made, Patchett was removed, and the plaintiff, Goldtree, was appointed in his place.

To the introduction in evidence of the record of the California probate proceedings the defendant objected, on the ground that the probate court of San Luis Obispo County never acquired jurisdiction of the subject-matter of the probate of the will, because the copies of the will and of the foreign probate thereof were not certified nor authenticated as required by sections 1323, 1324, and 1906 of the Code of Civil Procedure.

Sections 1322, 1323, and 1324 provide a mode of proving a defined class of wills in this state, viz., all wills which have been duly proved and allowed in any other of the United States or in any foreign country or state. The mode of proof and the evidence required in this class of cases differ from the mode and evidence required in other cases, yet all are cases of probate of wills.

Section 1324 provides that, upon the proofs and conditions therein mentioned, wills of this class "must be admitted to probate, and have the same force and effect as a will first admitted to probate in this state."

Conceding, for the sake of argument only, that the fact that the will had been "duly proved and allowed" in a foreign country or state, as expressed in section 1322, is a jurisdictional fact, in addition to the jurisdictional facts of cases in which wills are first probated in this state, yet it belongs to that class of jurisdictional facts which the court must find from the evidence; and if the court found this fact upon insufficient evidence, or without competent evidence, and thereupon proceeded to exercise jurisdiction, the action of the court in this respect was not void, but merely erroneous and subject only to direct attack by appeal, and was not open to the collateral

attack here made. (*Irwin* v. *Scriber*, 18 Cal. 500; *Hal-leck* v. *Moss*, 22 Cal. 276; *Rogers* v. *King*, 22 Cal. 73; *Lucas* v. *Todd*, 28 Cal. 182; *State* v. *McGlynn*, 20 Cal. 233; 81 Am. Dec. 118; *Luco* v. *Com. Bank*, 70 Cal. 339; Free-man on Judgments, secs. 118, 608.)

An error of the court in deciding that certain docu-mentary evidence not properly authenticated, proved a valid foreign probate of a will, is not different in char-acter or principle from an error in deciding, as in the case of *Irwin* v. *Scriber*, 18 Cal. 500, that certain evi-dence proved that the deceased had her last place of residence in Sacramento County. The error in the former case may have proceeded from a misconception of what constituted a valid foreign probate of a will, or from an error as to what was competent or sufficient evidence to prove it. In the latter case the error may have arisen from a mistaken view of what constituted a residence, or from an error as to what was sufficient or competent evidence to prove it. Such errors may be corrected by appeal, but do not render the judgment void, and it makes no difference that the code (secs. 1323 and 1324) provides that the fact of the foreign pro-bate shall appear or be proved by duly authenticated record evidence, as these provisions only regulate the procedure by which the court shall ascertain that fact. It may be that the court considered the "copy of the will and the probate thereof duly authenticated" by the documents produced and filed with the petition, as above stated; or for aught that appears, it may be that the court permitted this documentary evidence to be sup-plemented by proof, in accordance with section 1907 of the Code of Civil Procedure. In either case the error, if it was error (and this may be conceded for the present purpose), was such only as to the competency or suffi-ciency of the evidence upon which the court found the fact which is claimed to be jurisdictional, viz., that the will had been "duly proved and allowed . . . . in a

foreign country or state," as required by section 1322 of the Code of Civil Procedure.

I therefore think the trial court did not err in admitting in evidence the record of the probate court of the county of San Luis Obispo.

Counsel for appellant further contends that the court erred in sustaining a general demurrer to defendant's cross-complaint.

The cross-complaint shows that the demanded premises, southwest quarter and southwest quarter of southeast quarter of section 19, township 28 south, range 19 east, are a part of what are known as the university lands of California, sold by the state, through the agency of the board of directors of the university. In March, 1871, Carolan Mathers applied to purchase the southwest quarter of section 19. His application was accepted, and he paid twenty per cent of the purchase-money and interest on the remainder, in advance, as required by law, amounting to sixty-four dollars and fifty cents, and eight dollars fees, and received a certificate of purchase. In March, 1874, David C. Norcross, in the same manner and upon the like conditions, applied for the southwest quarter of the southeast quarter of said section 19, and received a certificate of purchase therefor.

In September, 1871, Mathers conveyed his interest in the land and assigned his certificate of purchase to David C. Norcross; and in September, 1875, David C. Norcross conveyed and assigned one undivided half of both parcels of land and of the certificates of purchase to John C. Norcross.

In October, 1875, David C. Norcross and John C. Norcross executed to the plaintiff, John Thompson, as administrator of Jonathan Thompson, deceased, a mortgage on 2,441 acres of land, including the demanded premises, to secure twelve thousand dollars and interest.

In January, 1877, at suit of the executors of Jonathan Thompson, in the then district court of San Luis Obispo

County, against David C. and John C. Norcross, a decree of foreclosure of this mortgage was entered.

November, 1877, in execution of said decree of foreclosure, the sheriff of San Luis Obispo County sold the mortgaged premises, including the demanded premises, to the plaintiffs, as trustees of the estate of Jonathan Thompson, deceased, and issued to them a certificate of sale. This sale was made in front of the court-house in San Luis Obispo County. The demanded premises are wholly in Kern County, but it does not appear from the cross-complaint, nor from the record, in what county the remainder of the mortgaged premises—2,441 acres —are situated.

June 8, 1878, the sheriff executed to plaintiffs a deed for the whole of the mortgaged premises. On July 2, 1879, the plaintiffs presented the sheriff's deed to the proper officers of the university, representing that they were the assignees of Mathers and Norcross, to whom the certificates of purchase had been issued, paid the balance of the purchase-money, and thereby procured state patents for the land.

On October 8, 1885, over six years after the date of the patents, David C. and John C. Norcross conveyed to defendant, McAlister, all their right, title, and interest in and to the demanded premises and said certificates of purchase.

Upon this state of facts, the defendant claims that he is the equitable owner of the land; that plaintiffs hold the legal title in trust for him; and that upon payment by him of "all money they have necessarily and properly expended in procuring said patents, with interest," (which he offers to pay), they should be ordered to convey to him the legal title, and to this effect is the prayer of the cross-complaint.

The sole ground upon which defendant bases his right to this relief is, that the sheriff of San Luis Obispo County had no authority to sell the demanded premises,

situated, as they were, wholly in Kern County, and that the sale was therefore void.

It is not denied, however, that the district court had jurisdiction to foreclose the mortgage, nor that the foreclosure procedure was entirely regular; and since it does not appear but that the mortgaged premises consisted of one body of land situated partly in San Luis Obispo County and partly in Kern County, these facts must be presumed in support of the jurisdiction and regularity of the proceedings of the district court.

The constitution (art. 6, sec. 5) provides "that all actions for the enforcement of liens upon real property shall be commenced in the county in which the real property, or any part thereof affected by such action or actions, is situated."

Section 392 of the Code of Civil Procedure requires "actions for the foreclosure of . . . . mortgages" to be tried in the county in which the subject of the action, or some part thereof, is situated, subject to the power of the court to change the place of trial; and further provides that "where the real property is situated partly in one county and partly in another, the plaintiff may select either of the counties, and the county so selected is the proper county for the trial of such action."

"The foreclosure of a mortgage" embraces the sale of the property and the execution of the sheriff's deed, as well as the decree of the court ordering the sale. A mortgage cannot be·said to be foreclosed, even in the sense of our code, until the mortgagor's right of redemption is cut off. Anderson's Law Dictionary defines "foreclosure" as follows: "1. Specifically, the extinguishment of a mortgagor's equity of redemption beyond possibility of recall. A mortgage is foreclosed in the sense that no one has the right to redeem it or to call the mortgagee to account under it. In no sense can the term be applied to a mortgage until *sale* of the property has been effected." (Referring to 3 Bla. Com. 118; *Puf-*

*fer* v. *Clark*, 7 Allen, 85; and *Duncan* v. *Cobb*, 32 Minn. 464.)

In providing that an action for the foreclosure of a mortgage may be commenced and tried in any county in which any part of the mortgaged property is situated, it must have been the intention of the legislature that the mortgage should be *foreclosed* in such county; that is to say, that every judicial, ministerial, and executive official act necessary to effect a foreclosure might be performed in any county in which any part of the property was situated. A piece of mortgaged land may be partly. situated in several different counties, as where three or four counties corner upon it, and also where it is traversed by a meandering stream which marks the boundary line between two counties. In such case it would be very inconvenient and unnecessarily expensive to require each part of the land to be separately sold and conveyed by the sheriff of the county in which it is situated. Beside, it would generally turn out that the sum of the value of all the parts thus sold would not equal the value of the undivided whole. These considerations strengthen the construction permitting the mortgage to be completely foreclosed in any one of the counties in which any part of the mortgaged property is situated.

It must therefore be presumed, upon the facts stated in defendant's cross-complaint, that the sheriff of San Luis Obispo County was authorized to sell and convey the demanded premises. This being so, it follows that the cross-complaint does not state facts sufficient to entitle the defendant to any relief, and that the demurrer to it was properly sustained.

I think the judgment should be affirmed.

BELCHER, C. C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.

Rehearing denied.