[Sac. No. 1336. In Bank.—October 12, 1905.]

## In the Matter of the Estate of JULIUS H. CLARK, Deceased.

WILLS—PROBATE OF DOMESTIC AND FOREIGN WILLS—CONSTRUCTION OF CODE.—Section 1294 of the Code of Civil Procedure, fixing the place of jurisdiction for all grants of original probate of domestic wills, and section 1322, fixing the same for grant of ancillary probate of foreign wills, mean that the will of a resident of this state must be proved originally as a domestic will in the county of his residence, and cannot, so far as this state is concerned, be primarily proved elsewhere and brought into this state for purposes of secondary or ancillary jurisdiction; and the title of section 1322, relating exclusively to "foreign wills," must be read into its language, and the words "all wills," used therein, mean "all foreign wills,"—that is, all wills other than domestic wills.

ID.—ORIGINAL PROBATE OF WILLS OF NON-RESIDENTS — JURISDICTION LIMITED TO PROPERTY.—The courts of a state may and do grant original probate upon wills of deceased non-residents who leave property within the state; but its operation is limited to and can affect only the property within the state, and cannot affect nor abrogate the formalities and proofs required in another jurisdiction where the deceased left property.

ID.—COMITY—INVASION OF ORIGINAL JURISDICTION.—Though in matters of probate states by comity permit ancillary jurisdiction of foreign wills, they are jealous in the extreme of any invasion of, or any attempt to invade, their original jurisdiction in such matters.

ID.—OFFER OF FOREIGN WILL—QUESTIONS OPEN—PROOFS—RESIDENCE— ORIGINAL PROBATE OF WILL OUT OF STATE.—When a foreign will is offered for probate in this state the questions of the sufficiency of proofs of the foreign probate, and of the residence of the deceased, are open for determination. If it be found that deceased was a resident of this state only original probate can be allowed; and under section 1299 of the Code of Civil Procedure petition may be made for original probate of a will which is beyond the jurisdiction of the state.

ID.—COLLATERAL ATTACK UPON ANCILLARY PROBATE—DIRECT APPEAL FROM ORDER REFUSING PROBATE.—Although a decree granting ancillary probate in this state of a will probated in another state cannot be collaterally attacked by proof that the deceased was a resident of this state, yet the superior court may refuse such probate upon proof that the deceased was a resident of this state, and upon direct appeal from the order refusing it, it should be affirmed. [Van Dyke, J., McFarland, J., and Shaw, J., dissenting.]

ID.—FOREIGN WILLS "DULY PROVED AND ALLOWED."—A foreign will cannot be "duly proved and allowed," within the meaning of section 1322 of the Code of Civil Procedure, so as to make the

foreign probate a proceeding *in rem* binding the whole world unless the proof was taken in a court whose territorial jurisdiction includes the domicile of the testator. Otherwise, the will has been proved and allowed so far as it affects the disposition of the property within the particular jurisdiction, but no farther. [Per Beatty, C. J., *in response to petition for rehearing,* November 13, 1905.]

APPEAL from an order of the Superior Court of Yolo County denying probate of a will proved in another state. E. E. Gaddis, Judge.

The facts are stated in the opinion of the court.

W. A. Anderson, and George Clark, for Appellant.

Garret W. McEnerney, Arthur C. Hutton, and S. D. Woods, for Respondent.

Charles S. Wheeler, and Campbell, Metson & Campbell, *Amici Curiae.*

HENSHAW, J.—Julius H. Clark died in the county of Yolo, in the state of California, on the fourteenth day of March, 1904, and was a resident of that county at the time of his death. He had resided in the county for more than twenty years continuously prior to his death. On the thirteenth day of July, 1872, while visiting in Keene, New Hampshire, he executed his last will and testament. This will was executed in conformity with the laws of the state of New Hampshire, and also in conformity with the laws of the state of California. It was filed by the executrix named therein in the office of the county clerk of Yolo County, with a petition praying for the probate thereof. In addition to having been a resident of Yolo County at the time of his death, the deceased left estate in that county. Subsequent to the filing of the will and petition the superior court of Yolo County in probate made an order permitting the original will to be withdrawn and forwarded to Keene, New Hampshire. The will was then probated in New Hampshire, and thereafter appellant herein filed his petition in the superior court of the county of Yolo, asking for probate of the same will upon an exemplified copy from the probate court of the state of New Hampshire. The superior court of Yolo County took

evidence and determined that at the time of his death Clark
was a resident of Yolo County. This finding is not in dispute.
As a legal consequence following this finding, the court con-
cluded that Clark's will should be admitted to probate orig-
inally in the superior court of the county of Yolo, and was
not entitled to admission as a foreign will. It denied the
petition, and this appeal is taken.

We are here for the first time upon a direct proceeding,
by appeal from an order refusing probate to such a will,
called upon to construe our code provisions governing the
question. We say that we are for the first time called upon
in direct proceedings, because, as will hereafter be shown, the
cases in which the question may be considered to have arisen
were either cases of collateral attack or cases where the pre-
cise question here presented was not made an issue, and
therefore, under well-settled principles, cannot be said to have
been decided. As all the provisions of the code bearing upon
a single subject-matter are to be construed together, and har-
moniously if possible, it may be well to set forth the sections
touching the probate of wills. Section 1294 of the Code of
Civil Procedure declares: "Wills must be proved and letters
testamentary or of administration granted: (1) In the county
of which the decedent was a resident at the time of his death,
in whatever place he may have died." Article 3 of chapter
2 of the same title (11) containing section 1294, above quoted,
is devoted to the probate of foreign wills. The article is itself
entitled "Probate of Foreign Wills," and section 1322 pro-
vides: "All wills duly proved and allowed in any other of
the United States, or in any foreign country or state, may be
allowed and recorded in the superior court of any county in
which the testator shall have left any estate." Section 1323,
following, provides that notice of a petition for proving a will
shall be given when a copy of the will and the probate thereof,
duly authenticated, shall be produced by the executor, or by
any other person interested in the will, with a petition for
letters. Section 1324 provides that if on the hearing it ap-
pears upon the face of the record that the will has been
proved, allowed, and admitted to probate in any other of the
United States or in any foreign country, and that it was
executed according to the law of the place in which the same
was made, or in which the testator was at the time domiciled,

or in conformity with the laws of this state, it must be admitted to probate and have the same force and effect as a will first admitted to probate in this state. Section 1299 declares: "Any executor, devisee or legatee named in any will, or any other person interested in the estate, may at any time after the death of the testator petition the court having jurisdiction to have the will proved, whether the same be in writing, in his possession or not, or is lost or destroyed, or beyond the jurisdiction of the state."

We take it that no jurist, feeling himself unembarrassed by earlier decisions and at liberty to treat the question as a new one, would hesitate to say: First, that section 1294 fixes the place of jurisdiction for all grants of original probate, while section 1322 does the same for grants of ancillary probate of authenticated copies of wills proved and probated in foreign jurisdictions. Second, that these laws mean that the will of a resident of the state of California must be proved originally as a domestic will in the county of his residence, and that, so far as the state of California is concerned, it cannot be primarily proved elsewhere and brought into this state for purposes of secondary and ancillary administration. In construing the language of section 1322 attention would be called to the fact that resort with propriety may be had to the title of an act, and often must be had, to determine its true scope and intent; that the title of section 1322, relating exclusively and in terms to foreign wills, will be read in, and of necessity must be read in, to the language of that section, so that "all wills" means and should be read to mean "all foreign wills"; and that "foreign wills," as the phrase is here employed, means all wills other than domestic wills, as plainly appears from the language of the section itself, which describes these wills as all those "duly proved and allowed in any other of the United States, or in any foreign country or state." In illustration, it might be pointed out that if the legislature had passed an act under the title of "An act for the government of boys in penal and reformatory institutions," and the body of the act had begun with the declaration, "All boys shall," etc., it would unhesitatingly be said that the phrase "all boys" had reference exclusively to all boys in penal and reformatory institutions in this state. We think this same unhampered jurist

would point out that the matter of recognizing the judgment of a foreign state rested originally wholly in comity, and that, saving as exacted by section 1 of article IV of the constitution of the United States, still rests wholly in comity. It would be pointed out that while the states themselves, as has this state, have by appropriate legislation provided that full faith and credit should be given to the adjudications of sister states, this never has meant that the state itself has parted with any of its sovereign rights, with any of its rights of primary jurisdiction, nor with any of the rights of its subjects, to have the will of a fellow-resident originally proved in the county of his residence, where, presumptively, he is the best known, and where they may the better litigate all questions touching the validity of the solemn instrument offered for probate.

Recognition would be given to the indisputable principle that every state has plenary power with respect to the administration and disposition of the estates of deceased persons as to all property of such persons found within its jurisdiction. Thus the courts of a state may and do grant original probate upon wills of deceased non-residents who leave property within that state. In California this is expressly provided for by section 1294, *supra,* and the rule as to other states is the same. (1 Woerner on Administrators, *439; *Shields* v. *Life Ins. Co.,* 119 N. C. 380, [25 S. E. 951]; *Gordon's Case,* 50 N. J. Eq. 397, [26 Atl. 268]; *Putnam* v. *Pitney,* 45 Minn. 242, [47 N. W. 790]; *Walton* v. *Hall's Estate,* 66 Vt. 455, [29 Atl. 803]; *Jacques* v. *Horton,* 76 Atl. 238.) But the limitations of the operation of this principle would also be recognized,—namely, that this exercise of original jurisdiction over the estates of non-residents affects, and can affect, only the property within the state. The judgment admitting the will to probate is valid in all other states only as to the property within the jurisdiction of the court pronouncing the judgment. It has no extra-territorial force, establishes nothing beyond that, and does not dispense with nor abrogate the formalities and proofs which may be exacted by other jurisdictions in which the deceased also left property subject to their laws of administration. (1 Woerner on Administrators, *491.) And in this connection it would be further pointed out that if the position contended for by appellant is sound it involves upon the part of the state a formal surrender of

so much of its sovereignty and right of primary jurisdiction, conferring that upon foreign states, and at the same time to this extent is subversive and destructive of the rights of its citizens. It would be said with exact truth that the full faith and credit which is accorded to the adjudications of sister states is a full faith and credit consonant with complete jurisdiction and control of the sovereign state over all its inhabitants and over all the property within its boundaries. No less would the practical hardships of such an interpretation be pointed out, because if it were so that all wills, therein including domestic wills of residents of this state, could be primarily proved in a foreign jurisdiction, and by mere exemplification of that proof be entitled to ancillary probate under the laws of this state, it would result in numerous instances that wills of residents of this state would be probated in foreign jurisdictions without the knowledge of those in interest resident in this state, and without an opportunity to them afforded of raising any question of fraud, insanity, undue influence, or the like, affecting the validity of the instrument. Further, it would be pointed out with justice that if the construction contended for be the true one, it is arrived at by obliterating all distinction between the probate of domestic and foreign wills, by refusing recognition to the language of the code classifying these foreign wills and by a surrender of the state's original jurisdiction in these matters, with the result that it places the state of California in an anomalous class by itself. For neither the laws of Great Britain nor of any sister state of the United States ever have permitted, and we venture to say ever will permit, any such doctrine, and it may be safely added that no civilized country in the world has ever entertained it. Numerous cases would be cited showing that, while in matters of probate states by comity permit ancillary jurisdiction of foreign wills, they are jealous in the extreme of any invasion of, or attempt to invade, their original jurisdiction in such matters. (*Manuel v. Manuel,* 13 Ohio St. 459; *Sturdivant v. Neill,* 27 Miss. 157; *Stark v. Parker,* 56 N. H. 481; *Wallace v. Wallace,* 3 N. J. Eq. 616; *In re Law* (Sup.) 80 N. Y. Supp. 410; *Moultrie v. Hunt,* 23 N. Y. 394; *Dial v. Gary,* 14 S. C. 573, [37 Am. Dec. 737]; Story on Conflict of Laws, sec. 457; 23 Am. & Eng. Ency. of Law, p. 114; Schouler on Executors, secs. 15, 57;

CXLVIII Cal.—8

2 Redfield on Wills, p. 290; 1 Woerner on Administrators, 226.)

In summing up, we think the unhampered jurist would reach the conclusion that our laws not only recognize, but sedulously preserve, the distinction between foreign and domestic wills and the probate thereof; that the law means what it says,—namely, that all domestic wills must be proved in the county of which the decedent was a resident at the time of his death, for thus the state preserves its sovereignty and its jurisdiction over matters primarily belonging to it, and thus also it preserves the rights of its other residents and citizens; furthermore, that all foreign wills may · be proved and allowed as provided in section 1322 et seq. of the Code of Civil Procedure; that in the case of a domestic will all questions touching the validity of the instrument are, and should be, primarily and exclusively cognizable by the courts of the state of the domicile; that in the case of a foreign will,—that is to say, of one not a resident of this state,— this state and its citizens have less concern with these questions of fraud, undue influence, and the like, and upon the offer of proof of such· a will it shall be admitted upon the evidence prescribed by section 1324, without right of contest upon such matters. (Code Civ. Proc., sec. 1913.)    But nevertheless and always, when a foreign will is so offered for probate in this state, two questions are open as new and original questions for the determination of our own probate court:. 1. The sufficiency of the proofs of foreign probate; and 2. The question of the residence of the deceased.   For if upon the question of residence it shall be determined that the deceased was in truth a resident of this state, it follows of necessity that the proper state court has exclusive original primary jurisdiction to admit the will to probate, and will not admit it as a foreign will for ancillary proceedings.    It does not, of course, follow that because the probate court under such circumstances will not admit it as a foreign will that it will refuse it probate altogether.   It will grant it probate, the facts warranting, in proceedings under section 1294 for original probate.   Nor can practical difficulty arise because such a will has been probated in a foreign jurisdiction, for the code (sec. 1299, *supra*) meets this precise situation by providing that petition may be made to the court having

jurisdiction to have the will proved, whether it be lost or destroyed, or beyond the jurisdiction of the state.

We have discussed this question under what we have said we were convinced would be the view of a jurist treating the case as one of first impression. We are met, however, with the argument that our own adjudications express a contrary view, and are determinative of the question. Not that alone, but that this view has been adopted by the courts in probate throughout the state, and that the result of the construction of the law here set forth would be to declare void all letters admitting such wills to probate, and cloud the title to untold millions of property in the hands of innocent holders. If such consequences were to result, or if in fact there were any such adjudications, a court would pause long and ponder gravely before announcing a construction which would lead to such direful consequences. But the answer is that this court has made no such adjudications, and that no such consequences can follow; for, as has been said, this is the first time that the question upon direct appeal has been presented for determination. The cases to which appellant refers and upon which he relies are those of *Rogers* v. *King,* 22 Cal. 72, *Goldtree* v. *McAlister,* 86 Cal. 93, [24 Pac. 801], and *Estate of Richardson,* 120 Cal. 344, [52 Pac. 832]. In *Rogers* v. *King* the attack was collateral, not direct. The opinion is addressed to this state of facts, and the essential part of it is as follows: "The agreed case states that the executor named in the will filed in the probate court a petition for the probate of the will, and filed therein an authenticated copy of said will, and that the petition stated all the necessary facts. . . . If, as agreed, the petition stated all the necessary facts, then upon its presentation with a copy of the will and the publication of due and legal notice, the court acquired jurisdiction to probate the will, and the judgment of the probate thereafter entered is conclusive. If any irregularities occurred in the proceedings or error in the judgment after jurisdiction was acquired, they could only be corrected by a direct proceeding for that purpose, and cannot be inquired into in this collateral proceeding." This is all that the case of *Rogers* v. *King* contains, and it amounts to no more than a declaration that, the court in probate having acquired jurisdiction and having admitted a will to probate, errors in the

exercise of its jurisdiction do not render its order admitting the will to probate void, and cannot be considered upon collateral attack. In *Estate of Richardson*, while it appears from the facts that the testator was a resident of California at the time of his death, and that his will had been originally probated in a sister state, and subsequently had been offered for probate in this state as a foreign will, the sole question at issue which this court was called upon to determine, and did determine, was the right of a nominee of a devisee to testamentary letters. The question now before the court, as to the right to probate the will under any circumstances as a foreign will, was never discussed nor decided. *Goldtree* v. *McAlister* was a case originally decided in Department and reconsidered by the court in Bank. That, too, involved the question, not of a direct, but of a collateral, attack upon the validity of an order admitting to probate as a foreign will the last testament of a resident of this state. The attack was principally directed to the sufficiency of the proof of authentication, and the court said: "An error of the court in deciding that certain documentary evidence, not properly authenticated, proved a valid foreign probate of a will, is not different in character or principle from an error in deciding, as in the case of *Irwin* v. *Scriber*, 18 Cal. 500, that certain evidence proved that the deceased had her last place of residence in Sacramento County. The error in the former case may have proceeded from a misconception of what constituted a valid foreign probate of a will, or from an error as to what was competent or sufficient evidence to prove it. In the latter case the error may have arisen from a mistaken view of what constituted a residence, or from an error as to what was sufficient or competent evidence to prove it. Such errors may be corrected by appeal, but do not render the judgment void." This case, then, must be taken to decide, and to decide only, that upon collateral attack an order admitting a will offered as a foreign will to probate is not void for error either in the proof of authentication or in proof of residence, as in *Rogers* v. *King* and *Irwin* v. *Scriber*. Question may be raised over the strict logic of that opinion, but no doubt can exist as to the strong necessity which called it forth. It must be taken, therefore, as settled in this state, upon the authority of the cases cited, that the probate of such wills is free from

attack upon these questions in collateral proceedings, but that upon the other hand it is the duty of the court in probate to do as the court here did, refuse probate to a will offered as a foreign will, if the court shall be satisfied from the evidence that the testator was in fact a resident of this state at the time of his death.

For the foregoing reasons the order and decree appealed from are affirmed.

Beatty, C. J., Lorigan, J., and Angellotti, J., concurred.

VAN DYKE, J., dissenting.—I dissent. The deceased, Clark, it appears, executed his will in 1872, at Keene, Cheshire County, New Hampshire, and left it in the custody of Cain & Benton, attorneys at law, in said county of Cheshire. After his death that will was sent out here and filed for probate in the county of Yolo, but before any action was taken thereon, upon the application of Mary M. Metcalf, a sister of the deceased and devisee and legatee of the estate under said will and the sole executrix named therein, for permission to withdraw said will and have the same proved in New Hampshire, the probate court of Yolo County entered the following order granting said application:—

"In the Superior Court of the State of California, in and for the County of Yolo. In the Matter of the Estate of Julius H. Clark, Deceased.

"Upon reading and filing the petition of Mary M. Metcalf, duly verified by her attorney, W. A. Anderson, and it appearing therefrom that it is to the best interests of the estate of said Julius H. Clark, deceased, and also for the best interests of the devisees of the will of the said deceased, and that it is impracticable and very expensive to probate the said will of Julius H. Clark in the state of California, and that the said will was executed in the state of New Hampshire, and that none of the witnesses to said will live in the state of California, but that they did live in the said state of New Hampshire, and that the said executrix, Mary M. Metcalf, is too feeble to come to the state of California, to apply for letters testamentary on said will, and it appearing from said petition that the said executrix desires to have said will probated in the county of Cheshire, state of New Hampshire, and

that the said Julius H. Clark left estate in said county at the time of his death: Wherefore it is by the court ordered, adjudged, and decreed that the clerk of the said superior court of the county of Yolo be, and he is hereby, ordered and directed to send the will of the said Julius H. Clark, now on file in his said office, to Mrs. Paul Thomson, at West Hartford, Connecticut, by express, or to deliver to W. A. Anderson, the attorney for Mary M. Metcalf, the said will to be so sent. And the clerk is hereby ordered to preserve a certified copy of said will in his said office.          E. E. GADDIS, Judge.''

Indorsed: ''Filed April 19, 1904. C. F. Hadsall, Clerk.''

Thereafter, on May 18, 1904, the proponent Du Bois, to whom an interest in said estate had been conveyed by said Mary M. Metcalf, devisee and legatee of the said will, filed a petition in the superior court of Yolo County for admission to probate of said will upon a duly authenticated copy thereof and its probate in the state of New Hampshire. Upon notice of said application having been given pursuant to the statute, the contestant L. J. Clark, son of the testator, and a legatee under the will, filed objections to the admission of the same upon the exemplified copy, upon the grounds, among others, that said Julius H. Clark, at the time of his death and at the date said alleged will was executed, was a resident of the county of Yolo, state of California; that said alleged will was a domestic will, and that the same could not be admitted to probate by virtue of having been previously admitted to probate by the courts of New Hampshire; that the superior court of Yolo County, state of California, had original and exclusive jurisdiction to hear an original petition to admit said will to probate; and that the courts of the state of New Hampshire had no jurisdiction to admit said will to probate, except for the purpose of carrying on an administration ancillary to that had in the state of California. Upon the hearing of the case, the superior court of Yolo County sustained the objection of the contestant upon the grounds stated, and denied the admission of the authenticated copy to probate, and from this order the appeal is taken. From the record it appears that the copy of the will was duly authenticated in conformity with the laws of New Hampshire, and that such will was valid under the laws of said state admitting it to

probate; that all the proceedings thereon were regular, and that there was nothing upon the face of the record to dispute the jurisdiction of the court of such state admitting the will to probate; and that said will was made and executed in conformity, not only with the laws of said state, but also in conformity with the laws of this state. The question, therefore, presented is whether, in the case of a testator, who, at his death, resided in this state, a will filed for probate in this state upon a duly authenticated copy thereof from the court of a sister state, first having been duly probated therein according to the laws of said state, may be admitted to probate, or must the original will be produced here for that purpose? Section 1322 of the Code of Civil Procedure, copied in the prevailing opinion, is taken from the act of 1850 to regulate the settlement of estates of deceased persons, being section 27 of said act. (Stats. 1850, p. 377, c. 129.) The language of the code sections bearing on the subject under consideration is plain and unambiguous, and cannot be controlled by any headlines of the chapter put there by the code commissioners. "The mere classifications can scarcely be deemed part of the law." (Endlich on Interpretation of Statutes, sec. 70.)

In the case of *Goldtree* v. *McAlister*, 86 Cal. 93, [24 Pac. 801], the plaintiff sued in the character of trustee of the estate of Jonathan Thompson, deceased, under his last will. The testator was a resident of the county of San Luis Obispo, and left estate therein. His last will had been duly proved and allowed in the Queen's Probate Court of London on the twenty-eighth day of October, 1875. His heirs and devisees were residing in this state and in England. Upon petition filed for the probate of said will from an exemplified copy thereof from said English court, the probate court of San Luis Obispo County, this state, after notice and proceedings as required by the code, admitted said will to probate in the following order: "It is ordered that the paper heretofore filed purporting to be a copy of the last will and testament of said deceased be admitted to probate as the last will and testament of said deceased; that the said John Thompson and John A. Patchett be and they are hereby appointed executors of said estate; and that letters testamentary issue to the said petitioners upon their taking the oath as required by law." Letters testamentary were accordingly issued to John Thomp-

son and J. A. Patchett, who duly qualified. The will also appointed Thompson, Patchett, and Grierson trustees of the estate, and devised the property to them for the uses and purposes stated in the will. Thereafter, by an order of said superior court, Patchett was removed and plaintiff Goldtree was appointed in his place. On the trial of the case the defendant objected to the introduction in evidence of the record of the California probate proceedings of San Luis Obispo County, on the ground that the probate court of San Luis Obispo County never acquired jurisdiction of the subject-matter of the probate of the will. Defendant's objections were overruled and judgment went for the plaintiffs, which judgment on appeal was affirmed by this court in Department. Appellant filed a petition for a rehearing, and made the point that as Thompson was a resident of California at his death, his will was domestic to the state of California, and that the California court had no jurisdiction to grant ancillary or secondary probate, as was done in that case. A rehearing was granted, and appellant filed additional points and authorities upon the rehearing in Bank, in which it is said: "Admittedly Jonathan Thompson was a resident of California at his death. It follows that his will, if any he left, was not a 'foreign' but a domestic will—domestic to the state of California. . . . The English court had no jurisdiction to grant original probate of a will domestic to this state. The California court alone had such jurisdiction. The California court had no jurisdiction to grant auxiliary or secondary probate of the will in question." And appellant's counsel especially relied upon the point of want of jurisdiction in the probate court of this state in the premises, and this question seems to have been fully presented to this court on the rehearing. In the opinion upon the rehearing by the court in Bank it is said: "The judgment appealed from in this case was affirmed January 31, 1890. A rehearing was granted, and the case has been argued in printed briefs. We have carefully considered the arguments of the learned counsel for appellant on the rehearing, but find nothing in them having the effect to change the former opinion." (86 Cal. 96, 97, [24 Pac. 801].) This case, which is the latest expression of this court on the question, seems to hold directly that a will of a resident of this state can be admitted to pro-

bate in this state on an exemplified copy of its probate in a court outside of the state.

As already shown, the will in question, upon petition, was ordered by the lower court to be withdrawn and transmitted to New Hampshire, where the deceased left property, to be there first admitted to probate. It can hardly be supposed that the court in doing this at the same time entertained the view that said will could only be admitted to probate in the first instance in Yolo County. To suppose so would be to suppose that the court set a snare to entrap petitioners so as to deprive the legatees and devisees under the will of the principal benefit resulting from the same. Under the provisions of the code, as well as upon the authority of *Goldtree* v. *McAlister*, 86 Cal. 93, [24 Pac. 801], the court below clearly erred in refusing to admit the will in question to probate under the circumstances, as shown, and the order to that effect should be reversed.

McFARLAND, J., dissenting.—I dissent, and think that the order appealed from should be reversed. In my opinion the language of section 1322 of the Code of Civil Procedure, "all wills duly proven and allowed in any other of the United States, or in any foreign country or state may be allowed and recorded," etc., is entirely too clear and explicit to leave any room for the play of construction. The fact that the section is preceded by the sub-heading "Probate of Foreign Wills" is not sufficient to overcome the unmistakable meaning of the language of the section. Indeed, the word "foreign" does not necessarily mean in law a country other than a sister state of the American Union. In the majority of instances it includes such sister states, and this view of its meaning is so well established as to have gone into the text-books and law dictionaries as settled law. In "Words and Phrases Judicially Defined" (vol. 3, p. 2881) it is said: "For all national purposes embraced by the federal constitution, the states and the citizens thereof are one, united under the same sovereign authority, and governed by the same laws. In all other respects the states are necessarily foreign and independent of each other; their constitutions and forms of government being (though republican) altogether different, as are their laws and institutions." In Bouvier's Law Dictionary (vol. 1, p.

811) it is said: "The several states of the American Union are foreign to each other with respect to their municipal laws." In Abbott's Dictionary (vol. 1, p. 514) it is said: "In American usage the several states of the Union are foreign to each other with respect to matters governed by their municipal laws; while the relations of the general government and either state are domestic. This consideration qualifies the usage of several of the phrases mentioned under the present head. It is abundantly well settled that a bill of exchange drawn in one state, payable in another, is a foreign bill. The corporations created by one state are constantly called foreign corporations in any other. In each state the judgments rendered in, and laws enacted by, another state are foreign judgments and laws. A port of another state is a foreign port." Therefore the word "foreign," in the subheading, is not at all inconsistent with the language of the section in question. And, of course, the legislature has full power over the whole subject of wills, descents, distribution of estates, and probate proceedings. There is not a word in the state constitution limiting its legislative authority in such matters.

SHAW, J., dissenting.—I dissent. So far as the policy of the provisions of section 1322 of the Code of Civil Procedure is concerned, that is a question for the legislature, and not for the courts. There are considerations both for and against the proposition that the will of a person who dies a resident of this state may be first probated in some other state. In cases of persons who have recently become residents of this state it is often very much more convenient and less expensive to pursue this course. A large part of the population of this state has always consisted of persons who have lived here but a short period of time. It may be that the legislature, having these circumstances in view, believed it the best policy to provide that this might be done, and enacted this statute for the express purpose of allowing it to be done. But, in any event, in view of the plain language of the section, the matter of policy is immaterial. "A cardinal rule of interpretation is that a statute free from ambiguity and uncertainty needs no interpretation. This must be so, for all interpretation and construction is for the purpose of ascertaining the

legislative will. When this is clear, interpretation is not allowable. In such case it cannot be argued that the result is unjust or against policy. The statute is itself conclusive upon these subjects." (*Davis* v. *Hart,* 123 Cal. 387, [55 Pac. 1060].) The section in question must have the same meaning now as it had when it was originally enacted. It first became a part of the statute law of this state in 1850 when it was enacted in section 27 of the Probate Act (Stats. 1850, p. 378, c. 129) in precisely the same language as that contained in section 1322 of the Code of Civil Procedure, except that the words "superior court" have been substituted for "probate court." In the Probate Act there was no chapter, heading, or subheading which could have any effect. It is inconceivable that the legislature would have re-enacted the section in the same language if it had intended to change the meaning, by limiting its application to wills of persons who at the time of their death resided out of this state. The phrase "all wills" in the section plainly includes wills of every description, domestic and foreign. Where the language of the statute is clear and unambiguous, as in this case, the title of the act, chapter, article, or subheading of the section cannot be resorted to for the purposes of giving it a different meaning from that which the words import. (*In re Boston M. and M. Co.,* 51 Cal. 624; *Cohen* v. *Barrett,* 5 Cal. 209; *People* v. *Abbott,* 16 Cal. 366; *Hagar* v. *Supervisors,* 47 Cal. 232.) Furthermore, it cannot be said that the decision will not tend to unsettle titles to real property. While it may be true that the determination of the court, upon the question of fact that the residence of the deceased at the time of his death was in some other state or country, is conclusive on collateral attack, and that this has been settled by the decisions of this court, yet it has never been decided that where, in case of the probate of a so-called foreign will, the petition on its face avers that the deceased died a resident of this state, but that the will had been first probated in some other state, the fact of lack of jurisdiction is not apparent on the face of the record, and may not be raised upon collateral attack. The records of this court show that there have been several cases where wills of this character have been proven as foreign wills, and it is a fair if not necessary inference that the actual cases of that character have been

quite numerous. Whatever may be now said in the way of a discriminating review of the previous decisions of this court, it must be admitted that the general opinion has been that, under section 1322, the will of a resident of this state, having been first admitted to probate in some other state, may be probated in this state as a foreign will. I think the court below erred in refusing to entertain jurisdiction.

A rehearing was denied, and the following opinion was filed on November 13, 1905:—

BEATTY, C. J.—In their petition for a rehearing counsel for appellant reiterate the argument that our construction of the code provisions relating to the proof of foreign wills (Code Civ. Proc., secs. 1322-1324) can only be sustained by reading into the statute a qualification of the words "all wills" which will limit its application to wills "of a certain kind," contrary to the intention of the legislature and the general understanding of the courts of the state and the legal profession. I take leave to doubt this general understanding of the courts and the profession, and again call the attention of counsel to the fact that it is wholly unnecessary to read anything into the statute in order to limit its application to wills of a certain kind. The qualifying words are plainly written in the statute, and the fault is with counsel in ignoring their existence and their force. The statute does not say "all wills" and stop there. Its language is (sec. 1322) "all wills duly proved and allowed" in any other state or foreign country. Wills that have been duly proved and allowed are wills "of a certain kind," and in order to determine whether a particular will is of that kind we have to give a construction to the words "duly proved and allowed." When, therefore, is a will duly proved and allowed? Proof of a will is a proceeding *in rem*. To the validity of any judgment *in rem*—a judgment which as to the *res* binds all the world—there must be adequate public notice of the proceeding, and such notice must emanate from a court which has jurisdiction of the *res*. When the will of a resident of this state is the *res*, is it possible that the courts of every civilized country on the globe have a concurrent jurisdiction upon

published notice to determine its validity? If we look to our own statute for a test of jurisdiction in such cases, we find that we confine the jurisdiction to the county of which the decedent was a resident at the time of his death, and this, it is safe to say, is the ordinary rule. Authority to take proof of wills is confined to courts whose territorial jurisdiction includes the domicile of the decedent. The fact that in this state, as in other states and countries, wills of nonresidents are admitted to probate on original proceedings for the purpose of administering upon their property within the state is no impeachment of this proposition. In such cases it is the property within this state and subject to its jurisdiction which constitutes the *res*, and proof of the will is allowed as a mere incident or means of determining the disposition of that property. And the decree which has only that purpose is conclusive only to that extent. It binds that property here and everywhere that the decrees of our courts are accorded full faith and credit, whether by comity or by force of the federal constitution. But such a decree is not binding as to the will itself in other jurisdictions where the decedent may have left property, and still less is it binding upon the courts of his domicile. It is not conclusive in other jurisdictions simply because, as a will and for all purposes, it has not been duly proved and allowed. It has been proved and allowed so far as it affects the disposition of the property within the particular jurisdiction, but no farther.

The considerations thus briefly indicated, it seems to me, ought to have prevented the hasty construction which we are told has been generally placed upon our statute by the profession and the courts in this state. As to the courts, it is true that in three instances, as shown by our records, the construction contended for by counsel has been accepted by the trial court, but in this court decrees admitting wills of residents of California to probate, on proof of foreign probate, have never been sustained, except as against collateral attack. My own opinion is clear that no will has been duly proved and allowed within the meaning of sections 1322-1324 of the Code of Civil Procedure, unless the proof has been taken in a court whose territorial jurisdiction includes the domicile of the testator. When a will has been admitted to probate here on proof of its admission to probate in some other jurisdic-

tion, not including the domicile of the decedent, the decree and proceedings regularly taken under it are, of course, secure against what in *Goldtree* v. *McAlister*, 86 Cal. 93, [24 Pac. 801], is held to be collateral attack, and this irrespective of the question whether that decision can be reconciled with a correct construction of the statute. Correct or not, the rule of that case has become a rule of property, and as such must be upheld upon the doctrine of *stare decisis* for the protection of vested rights.